# ROSE SPITHOVER, Appellant, v. JEFFERSON BUILDING & LOAN ASSOCIATION.

**Division Two, February 12, 1910.**

1. **WITNESSES: Deceased Party: Agent.** Where plaintiff's deceased husband acted for her in making the bid at the time the loan of the building and loan association was made to her, its president and secretary are not incompetent to testify that the money was awarded to her at public auction and competitive bid.

2. **BUILDING AND LOAN: By-Laws: No Separate Auction.** A provision of a by-law of the building and loan association that "no loan shall be made to a second bidder on the same evening for a premium lower than the successful bid" does not mean that there could be no separate auction of different funds on the same evening.

3. ————: Loan: Usurious Interest: Constitutional. A charg-
ing of a shareholder of a building and loan association of thirty-
five per cent of her loan as and for a premium, although when
taken with the interest charged the two together exceed the
usual lawful rate of interest, is not usurious; and the statute
permitting such premium to be bid and charged (Sec. 1364,
R. S. 1899) is not in violation of the constitutional provision
declaring that "the General Assembly shall not pass any local
or special law fixing the rate of interest."

Appeal from St. Louis City Circuit Court.—*Hon. Matt
G. Reynolds* and *Hon. Wm. M. Kinsey,* Judges.

·AFFIRMED.

*Jas. J. O'Donohoe* for appellant.

(1)   The funds of a building and loan association
must be offered to the stockholders at a stated meet-
ing without restriction as to the premium. Each stock-
holder must be afforded the opportunity of borrowing
at the lowest rate he can in competition with other
stockholders.   The officers or board of directors have
no right to regulate by by-law or otherwise the prem-
ium.   Lewis v. Loan and Building Ass., 183 Mo. 351;
McDonnell v. De Soto Assn., 175 Mo. 250; Ruppell v.
Mo. Guar. Assn., 158 Mo. 613; Arbuthnot v. Brookfield
Assn., 98 Mo. App. 382; Thudium v. Brookfield Assn.,
98 Mo. App. 377; Sappington v. Loan Co., 91 App. 551;
Fry v. Savings & Bldg. Assn., 88 Mo. App. 289; Fow-
les v. Loan Co., 86 Mo. App. 103; Clark v. Mo. Guar.
Assn., 85 Mo. App. 388; State ex rel. v. Stockton, 85
Mo. App. 477; Miller v. Mo. Guar. Assn., 83 Mo. App.
669; Edinger v. Mo. Guar. Assn., 83 Mo. App. 615;
Barnes v. Mo. Guar. Assn., 83 Mo. App. 466; Sapping-
ton v. Loan Co., 76 Mo. App. 242; Price v. Loan Co.,
75 Mo. App. 551; Moore v. Building & Loan Assn., 74
Mo. App. 468; Brown v. Archer, 62 Mo. App. 277.   (2)
Secs. 2812 and 2814, R. S. 1889, in force in the year
1892, when the loan in question was made, as well as
all by-laws based thereon, do not protect the present

case from the charge of usury, for the Legislature has no power by a special law to authorize a certain class of corporations to loan money at a higher rate of interest than is allowed by the Constitution and general laws of the State; and such sections and by-laws are in conflict with section 53 of article 4 of the Constitution of the State. Maloney v. Real Estate Assn., 57 Mo. App. 384; Reiser v. Savings F. Assn., 39 Pa. St. 137; B. & L. Assn. v. McKnight, 35 Pa. St. 470; Premium F. Association's Appeal, 39 Pa. St. 156; Link v. B. & L. Assn., 89 Pa. St. 15; Simpson v. Kentucky Citizens' Assn., 101 Ky. 496; Monticello B. & L. Assn. v. Smyth, 10 Cent. L. J. 434; Citizens' Security Co. v. Uhler, 48 Md. 455; Association v. Bollinger (S. C.), 12 Rich Eq. 124; Cooley on Constitutional Limitations, p. 485; Endelich on Building Associations, sec. 363; State ex rel. v. McGrath, 95 Mo. 193. (3) To establish an agency for the wife on the part of the husband, the evidence must be strong, cogent and more satisfactory than would be required between persons occupying different relations; and the same rule obtains with respect to ratification by the wife of a contract made by the husband, as her agent. Bank v. Bank, 130 Mo. 161; Doross v. Broderick, 78 Mo. App. 260; Thompson v. Kehrmann, 60 Mo. App. 488; Planing Mill Co. v. Brundage, 25 Mo. App. 268; Barker v. Berry, 8 Mo. App. 447. But if appellant's husband had authority as her agent to appear at the meeting of June 8, 1892, and bid the premium, still appellant's husband being dead rendered respondent's evidence in reference to the same wholly incompetent. Hollmann v. Lange, 143 Mo. 106; Crosno v. Milling Co., 106 Mo. App. 236; Wilden v. McAllister, 91 Mo. App. 446; Saltelle v. Life Ins. Co., 81 Mo. App. 509; Nichols Shepard & Co. v. Jones, 32 Mo. App. 657.

*Kinealy & Kinealy* for respondent.

(1) Appellant must present her case in this court upon the same theory on which she tried it in the circuit court, and therefore she cannot here seek relief on the ground that respondent's by-law as to auctioning money is void, or that she did not receive from the association the full amount of the loan made by her. Kirkpatrick v. Wiley, 197 Mo. 123; Atterbury v. Hopkins, 122 Mo. App. 172. (2) Our laws regulating building and loan associations and exempting them from the effects of the usury statutes are not unconstitutional. Sheldon v. Birmingham Bldg. Assn., 121 Ala. 278; Cook v. Equitable Bldg. Assn., 104 Ga. 814; Holmes v. Smythe, 100 Ill. 413; Security Assn. v. Elbert, 153 Ind. 198; Iowa Sav. Assn. v. Heidt, 107 Iowa 297; Peoples B. & L. Assn. v. Billing, 104 Mich. 186; Zenith Assn. v. Heimbach, 77 Minn. 97; Home Bldg. Assn. v. Nolan, 21 Mont. 205; So. Omaha Assn. v. Wirrick, 63 Neb. 598; Cramer v. So. Ohio L. & T. Co., 72 Ohio St. 395; Smoot v. Peoples Assn., 95 Va. 686; Archer v. Baltimore Assn., 45 W. Va. 37; Stanley v. Verity, 98 Mo. App. 632. (3) Martin Kelly was a competent witness. Bank v. Slattery's Admr., 166 Mo. 620; Fink v. Hey, 42 Mo. App. 295; Myer v. Old, 57 Mo. App. 639; Jenkins v. Emmons, 117 Mo. App. 1.

GANTT, P. J.—The plaintiff was the owner of ten shares of stock of the par value of $240 each in the defendant corporation and building association, organized under the laws of this State, and on the 30th day of June, 1892, she borrowed from it the sum of $2400, and, together with her husband, Henry Spithover, executed to the defendant a bond, wherein they acknowledged themselves indebted to the association in the sum of $2400, with $10 per month interest from date, and a premium of $8.40 for a preference in obtaining the loan, and conditioned that they would

pay to the association $28.40 every month as the dues on the stock, interest, and premium on the loan, and also that they would promptly pay all fines assessed against them and taxes and assessments levied upon the real estate described in the deed of trust securing the bond; and that if at any time they should permit the dues, interest, premium or fines to remain unpaid for six months, then the whole debt should become due at once at the option of the association and the deed of trust might be enforced for the payment of the debt. At the same time as further security for the bond and debt, plaintiff and her husband executed to Julius E. Greffet, as trustee, a deed of trust upon the lot of ground in City Block 2332 of the city of St. Louis, having a front of twenty-five feet on the north line of Madison street. The deed of trust provided that in case the dues, interest, premium or fines should become in default for six months, or if at any time, such dues, interest, premium and fines accumulate so as to equal the sum of six months' dues, interest, premium and fines, or if the plaintiff failed to pay the taxes on the property or to keep the same free from mechanics' liens, the trustee might proceed to sell the property for the purpose of paying the amount due.

At the time of the execution of this bond and deed of trust, plaintiff also pledged her ten shares of stock to the association. The last payment made by the plaintiff and her husband on account of the loan was in February, 1900, and because of the default in payments the association caused the property to be sold after advertising the same, on the second day of March, 1901, and it was purchased by the association for $2250. On the 28th of August, 1905, plaintiff instituted this suit claiming that the loan made to her was usurious and that she had in reality paid back all that was due from her, and consequently there was no default on her part at the time of the sale of the property by the trustee, and in her petition she prays that

an accounting may be had between the parties, and that she may be given judgment against respondent for the amount found to have been paid in by her, and also the amount that the property brought at the foreclosure sale, together with interest thereon at six per cent per annum, less the amount of the loan made to her, with five per cent interest thereon.

The grounds upon which plaintiff seeks recovery are set forth in her petition as follows: ''Plaintiff states further that defendant charged plaintiff thirty-five per cent of said loan of twenty-four hundred dollars as and for a premium, and that said premium is unreasonable, extortionate, oppressive, illegal and usurious; and article 10 of chapter 13 of the Revised Statutes of Missouri, 1899, particularly section 1362 thereof, and article 9 of chapter 42 of the Revised Statutes of Missouri, 1899, especially section 2814 thereof, under which said loan was pretended to be let, and by virtue of which it (defendant) was incorporated, are all in conflict with and in contravention of section 59, article 4, of the Constitution of the State of Missouri, and especially that part of said section of said article, which provides: 'The General Assembly shall not pass any local or special law fixing the rate of interest,' and in violation of sections 5973 and 5975, chapter 90, of the Revised Statutes of Missouri, 1899, and in conflict with section 3708, chapter 40, of the Revised Statutes of Missouri, 1899. That the Constitution and statutes aforesaid were all in full force and effect at all of the dates herein named. Plaintiff further states that said loan was not awarded by means of an auction and there was no competitive bidding therefor; on the contrary, defendant charged said premium through private contract with plaintiff and by an arbitrary demand of said thirty-five per cent per annum.''

On the part of the defendant the evidence tended to prove that at a regular monthly meeting on June 8, 1892, the executive committee presented an appli-

cation from the plaintiff and her husband for a loan of $2200, more or less, to purchase a lot on the north side of Madison between 19th and 20th streets, and erect thereon a two-story brick stable with four living rooms above. The president, Mr. Hercules, offered $2200 more or less for sale to the highest bidder, and thirty-five per cent premium was offered by Mrs. Spithover; there being no higher bid, the president declared $2,200 more or less sold to Mr. and Mrs. Spithover at thirty-five per cent premium. It was then moved and seconded that the loan to Mr. and Mrs. Spithover be granted subject to the approval of the real estate and building committees and also subject to the borrowers paying into the association two years' dues in advance on the number of shares borrowed on, and this motion was adopted.

Section 36 of the by-laws of the defendant corporation was offered by the plaintiff and read in evidence; it was in these words: ''The funds of the association will arise from the collection of monthly dues, premiums on loans, fines and other sources. The money thus accumulated shall the second Wednesday in each month be put up *at auction,* and awarded to the shareholder who bids the highest premium for the same. Each stockholder is entitled to receive from the association a loan on real estate security of $240 for each share of stock he holds. The successful bidder shall be entitled to take at the premium bid, a loan on all the shares he holds. If there is not that much money on hand, the succeeding collections shall be placed to his credit until his loan is all paid off. No loan shall be made to a second bidder on the same evening for a premium lower than the successful bid. The secretary may bid in any loan for any member requesting same and filing his application. All members desiring to take out a loan must file with the secretary an application as prescribed by law.''

It was admitted that the real estate upon which

the loan was secured was the sole and separate property of the plaintiff.      Other facts will be noted if necessary, in the course of the opinion.

It is obvious that the plaintiff based her claim for relief upon two substantive propositions, to-wit: that the loan which was made to her was not awarded at an auction of the money of the association, but was made through private contract, and secondly, that the statute (sec. 2814, R. S. 1889) which provided, "No premiums, fines or interest on such premiums that may accrue to the said corporation according to the provisions of this article shall be deemed usurious, and the same may be collected as debts of like amount are now by law collected," is and was unconstitutional.

I. In regard to the first proposition that the money or loan was not awarded to her at an auction as required by the statutory provision in section 2812, Revised Statutes 1889, there was absolutely no proof worthy of the name which sustains her contention in this respect. The testimony of Mr. Kelly, the secretary of the association, and of Mr. Hercules, the president, as well as a record of the association made on the day the loan was awarded to her, contradicts her contention in this respect and the proof on her part utterly fails to substantiate her claim.  She herself did not establish the truth of this allegation when she was a witness on the stand, and the deed of trust which she executed to secure the loan recites on its face "said premium having been bid at the rate of thirty-five per cent." As to her insistence that Mr. Kelly and Mr. Hercules were not competent witnesses, it appearing that plaintiff's husband acted for her on the occasion of the awarding of the loan on her bid, their competency, even if questioned at the proper time, was settled by this court In Banc in Southern C. S. Bank v. Slattery's Admr., 166 Mo. 620.

To the further contention along this line, that there could be no fair letting under the association's

by-laws, section 36, no such question as that was presented to the circuit court, or passed upon by it. This by-law was introduced by the plaintiff, and it is perfectly obvious that it is not obnoxious to the criticism of the plaintiff. Her construction of this section is utterly untenable. It does not mean as she contends that there could not be a separate auction of different funds on the same night or same occasion. Her contention is that because Mr. Gregory had bid off a loan on that same evening therefore the separate auction subsequently had, at which she bid off the loan in suit, was contrary to the by-law and illegal. We think the by-law is not susceptible to any such construction.

We may also add in this connection that the point attempted to be made by the plaintiff in regard to section 35 of the by-laws, is wholly outside of the record in the case and was not involved in any manner, and was not before the circuit court, and was entirely unsupported by any evidence whatever.

II.   Although section 2814 of the Revised Statutes of 1889 was enacted in 1879, and appears in the revision of 1879 as a new section, number 964, and is substantially in the same form in the revision of 1899, section 1364, its constitutionality has never been determined by this court. But the question of usury, as inhering in these building and loan contracts, has been the occasion of many decisions in our sister states upon the origin and character of such associations and especially as to the relation of a loan to the stock upon which it is based. And while there has not been perfect unanimity of opinion on the subject, a very large majority of the courts have upheld the constitutionality of statutes which are practically the same as section 2814, Revised Statutes 1889. Some of the courts, notably the Supreme Courts of Kentucky, South Carolina and North Carolina, treat the sale of the funds for premium as a subterfuge for charging usurious

interest, and when the premium and the interest on a loan exceed the lawful legal rate prescribed by statute for all other loans the transaction falls within the penalty of the usury laws and the association can only recover the lawful rate of interest on its loan or the amount actually advanced to the borrower, and the act of the Legislature, which permits such associations to exact from their borrowing members premiums in addition to the legal rate of interest, are in violation of constitutional provisions in those states which forbid the Legislature passing any local or special acts regulating the rate of interest. [Simpson v. B. & L. Association, 101 Ky. 496; Mills v. B. & L. Association, 75 N. C. 299; Association v. Bollinger, 12 Rich. Eq. (S. C.) 124.] A loan to members at a legal rate of interest with reasonable dues for the maintenance of the organization, however, has been held by these courts as not usurious. On the other hand, the Supreme Courts of Alabama, Georgia, Illinois, Indiana, Iowa, Michigan, Minnesota, Montana, Nebraska, Ohio, Virginia and West Virginia have sustained statutes in all substantial respects like section 2814, Revised Statutes 1889, as constitutional, not inimical to our constitutional provisions against special legislation "fixing the rate of interest," and not violative of the general provision of the Constitution of these states against the passage of any local or special law. Thus in Alabama, Sheldon v. Birmingham Association, 121 Ala. l. c. 284, the court said: "A by-law of the defendant exhibited in the bill provides: The amount paid into the treasury each month shall be sold to the highest bidder or bidders and any member taking an advance or loan shall allow the premium offered by him or her to be deducted as set forth in section 36, and shall secure the association for such advance or loan by bond or mortgage on stock of the association. The by-laws also provide: 'None but members shall be allowed to bid for a loan or advance.' Under such system premi-

ums result from competing bids of shareholders *inter se* for the privilege of receiving the loan and in one respect at least they stand upon a different footing from interest in that they are controlled by the competing members and not by the lending association. If the premium be treated as interest, the general interest rate of eight per cent may be exceeded in the interest charge, but the power given by the statute to the association and its members to so contract among themselves is not a special privilege in a sense obnoxious to the constitutional provisions looking to the conservation of equal rights. The peculiar plan of business they adopt and the mutual participation in the profits arising from it, mark building and loan associations as a class so distinct from ordinary lenders as to warrant the distinct legislative grant of the power to so regulate charges for an advance or loan. Besides the statute is general in its application in that it excludes no one from the right to enter into the relation of either a borrowing or non-borrowing stockholder, or from the right to organize under its provisions the class of corporations having such power to lend, and thereby to participate in the benefits conferred by the statute.'' [Montgomery Association v. Robinson, 69 Ala. 413.]

The act incorporating building associations in the state of Illinois, approved April 4, 1872, contained a section, numbered 10, in almost the identical words of section 2814, Revised Statutes 1889, of this State, and on a bill charging usury because the bonus bid for the loan increased the interest beyond the legal rate, the Supreme Court of that state held said section to be in violation of two sections of the Constitution of Illinois, namely that prohibiting the regulation of interest on money and that prohibiting the granting to any corporation any special or exclusive privilege by a special or local law. Afterwards, however, in Holmes v. Smythe, 100 Ill. 413, the same act came before the Su-

preme Court again and Mr. Justice SCHOLFIELD, who
had written the previous decision of the court, again
speaking for the court held that the act was a general
law applicable to all citizens of the State who chose to
bring themselves within the relations and circumstan-
ces provided for by it and is not within the prohibition
of the Constitution (section 22 of article 4) which de-
clares that the General Assembly shall not pass local or
special laws "regulating the rate of interest on money"
or "granting to any corporation, association or indi-
vidual any special or exclusive privilege, immunity or
franchise whatever."

In Iowa Savings and Loan Association v. Heidt,
107 Iowa l. c. 303, it was said: "First, it is said that
the Building and Loan law of the State is unconstitu-
tional, because it is class legislation. Some of the ar-
guments advanced in support of this claim assail rath-
er the policy of such statutes than the power to enact
them. In theory these institutions are profit-sharing.
The amounts directly paid for the use of money go in-
directly to the benefit of the stockholders, through the
increase in the value of their shares. Where the loans
are confined to shareholders, we can see good reason
for exempting such associations from the operation
of the usury law. That the constitutional power ex-
ists to make this exemption, we think is without seri-
ous doubt. [Association v. Billing, 104 Mich. 186;
Trust Company v. Whithed, 2 N. D. 82; Archer v. As-
sociation, 45 W. Va. 37.] See, also, on the general
character of these institutions and the reasons for
special legislation in their favor, Hawkins v. Associa-
tion, 96 Ga. 206; Association v. Monk, 30 Atl. 872; As-
sociation v. Shields, 71 Miss. 630."

In Security Savings Association v. Elbert, 153
Ind. l. c. 202, the Supreme Court of that state said:
"This court, since the McLaughlin case, 62 Ind. 264,
has continued to recognize that the transaction between
a borrowing member and his society is not a mere loan

of money as between strangers. [Citing numerous Indiana cases.] That the transaction is not in its nature usurious, seems to be supported by the great weight of authorities. [Freeman's note to Bank v. Cook, 46 Am. St. 200; 4 Am. & Eng. Ency. Law (2 Ed.), pp. 1054, 1056.]''

See, also, a full review of the law of building and loan associations and the character of the applications between the stockholder and the association in Cook v. The Equitable Building & Loan Association, 104 Ga. 814, and in Patterson v. B. & L., 14 Lea (Tenn.) 677, in which those courts also held that a provision similar to section 2814, Revised Statutes 1889, is not unconstitutional.

It seems unnecessary to make further citations of authority along this line, and it is only necessary to add that the great weight of authority in this country is to the effect that a statute like ours, section 2814, Revised Statutes 1889, is perfectly constitutional and therefore the contract for premium at a public auction of the money is lawful and does not violate our general statute against usury.

The judgment of the circuit court was for the defendant, and in our opinion, was correct, and it is therefore affirmed.

*Burgess* and *Fox, JJ.,* concur.