JOHN J. MULROONEY, Administrator of Estate of JOHN BULFIN, Appellant, v. IRISH-AMERICAN SAVINGS & BUILDING ASSOCIATION.

Division Two, April 8, 1913.

1. **RESULTING TRUST: Deed as Mortgage: Necessary Proof.** The *prima facie* presumption is that a deed absolute on its face is what it purports to be; and the burden is upon the grantor to establish, by clear, cogent and convincing proof, that it was not an absolute conveyance, but a mortgage, and being such that the grantor has a resulting trust in the proceeds of the property after sale and the payment of an existing deed of trust.

2. ———: ———: ———: **Building and Loan Mortgage.** Plaintiff had given a deed of trust to a building and loan association to secure a loan, and defaulting for six months in the payment of premiums the association entered upon its records that "unless within seven days from notice he pay off the delinquency or entire loan, he must either give the association a quit-claim deed or the property be advertised for sale under the deed of trust." He did give a quit-claim deed, which expresses a consideration of only one dollar, which was not paid; but the

association's minutes recite that twenty-five dollars were paid him because he "has no money to pay one month's rent of his new place and to enable him to move." He claims that there was an oral arrangement between him and the secretary of the association, who came to him at the time the quit-claim was executed, by which, in consideration of the deed, the association was to repair the house, rent it, apply the rents on the loan until sold, and when sold so much of the proceeds on the loan as would pay it, and pay him the balance, and he sues for such balance. But his testimony about the alleged agreement is not clear, definite or certain, and is clearly contradicted by the secretary, who says there was no such agreement. *Held*, that the evidence is not sufficient to establish a mortgage and a resulting trust.

3. **STATUTES: Building and Loan Associations: Constitutional.** The constitutionality of Secs. 3389 and 3391, R. S. 1909, is affirmed on the authority of Spithover v. Building & Loan Association, 225 Mo. 660.

4. **USURY: Building & Loan Association: Thirty Per Cent Premium: Limitations.** A loan by a building and loan association at a premium of thirty per cent, evidenced by a deed of trust bearing five per cent, is so unreasonable and extortionate as to be open to investigation and correction by a court, and such investigation is authorized by Sec. 3391, R. S. 1909, if suit is timely instituted. But where the loan was made nine years before suit was brought, and the borrower ceased to pay premiums seven years prior thereto, such investigation is barred by the Statute of Limitations. Nor is the bar tolled by the statute in reference to the discovery of fraud; nor is the ten-year statute made applicable by the fact that the loan is secured by a deed of trust on real estate. The real estate is but an incident; the loan itself is the thing for which the usurious interest was charged.

5. ————: ————: ————: ————: **Linked up with Accounting.** Where the purpose of the suit was to have the deed, by which the borrower after default conveyed the property back to the association, declared a mortgage, and for an accounting on the theory that he had a resulting trust in the proceeds of a subsequent sale of the property, and that part of the suit must fail because of insufficient proof, the matter of usury in the original loan becomes an independent matter, and the bar of limitations as to it cannot be avoided by an attempt to link them together, although if plaintiff could have maintained the part of the suit for an accounting the court could then link up and connect with it the transaction as to usury.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*James J. O'Donohoe* for appellant.

(1) The funds of a building and loan association must be offered to the stockholders at a stated meeting without restriction as to the premium. Each stockholder must be afforded the opportunity of borrowing at the lowest rate he can in competition with other stockholders. The officers or board of directors have no right to fix by law or otherwise a minimum or maximum premium. Sec. 1362, R. S. 1899; Lewis v. Loan & Bldg. Assn., 183 Mo. 351; McDonnell v. Sav. & Bldg. Assn., 175 Mo. 250; Ruppell v. Guar. Sav. & Bldg. Assn., 158 Mo. 613; Arbuthnot v. L. & B. Assn., 98 Mo. App. 382; Thudium v. L. & B. Assn., 98 Mo. App. 377; Sappington v. Loan Co., 91 Mo. App. 551; Fry v. Sav. & Bldg. Assn., 88 Mo. App. 289; Fowles v. Loan Co., 86 Mo. App. 103; Clark v. Guar. Sav. & Bldg. Assn., 85 Mo. App. 388; State ex rel. v. Stockton, 85 Mo. App. 477; Miller v. Guar. Sav. Bldg. Assn., 83 Mo. App. 669; Edinger v. Guar. Bldg. Assn., 83 Mo. App. 615; Barnes v. Guar. Sav. & Bldg. Assn., 83 Mo. App. 466; Sappington v. Loan Co., 76 Mo. App. 242; Price v. Empire Loan Co., 75 Mo. App. 551; Moore v. Building & Loan Assn., 74 Mo. App. 468. (2) It is the law of this State for nearly three-quarters of a century that an agreement such as stated in the petition need not be in writing. Rose v. Bates, 12 Mo. 30; Groves' Heirs v. Fulsome, 16 Mo. 543; Slowey v. McMurray, 27 Mo. 118; McNew v. Booth, 42 Mo. 189; Peacock v. Nelson, 50 Mo. 256; Damschroeder v. Thias, 51 Mo. 100; Rogers v. Rogers, 87 Mo. 257; Fallon v. Clopton, 89 Mo. 284; Berlien v. Bieler, 96 Mo. 491; Leahey v. Witte, 123 Mo. 211; Richardson v. Cham-

pion, 143 Mo. 545; Phillips v. Hardenburg, 181 Mo. 475; Berg v. Moreau, 199 Mo. 416. Full performance by one of the parties to a contract takes an express trust out of the operation of the Statute of Frauds. Wright v. Tinsley, 30 Mo. 389; Gupton v. Gupton, 47 Mo. 37; Sutton v. Hayden, 62 Mo. 101; Sharkey v. McDermott, 91 Mo. 647; Hall v. Harris, 145 Mo. 614; Alexander v. Alexander, 150 Mo. 579; Bless v. Jenkins, 129 Mo. 657; Marks v. Davis, 72 Mo. App. 562; Hasenbeck v. Hasenbeck, 111 Mo. App. 38. Past performance does likewise. Hoyle v. Bush, 14 Mo. App. 408; Fuchs v. Fuchs, 48 Mo. App. 23. The Statute of Frauds has no application in a suit based upon fraud practiced by defendant. Corder v. O'Neill, 176 Mo. 401. An express trust in personal property can be created by parol. Banking Co. v. Miller, 190 Mo. 665. A conveyance absolute on its face from a debtor to his creditor, will, in equity, be treated as a mortgage. Brant v. Robertson, 16 Mo. 129; Sharkey v. Sharkey, 47 Mo. 543; O'Neill v. Capell, 62 Mo. 202; Griswold v. Seligman, 72 Mo. 124; Borum v. Reed, 73 Mo. 462; Schradski v. Albright, 93 Mo. 48; Hargadine v. Henderson, 97 Mo. 386; State to use v. Bell, 2 Mo. App. 103; Newell v. Keeler, 13 Mo. App. 191. (3) The ten-year Statute of Limitations applies in this case and it did not begin to run until after the sale of the real estate and the repudiation of the agreement by respondent. Hunter v. Hunter, 50 Mo. 445; Bender v. Zimmerman, 80 Mo. App. 138; Shinn v. Wooderson, 95 Mo. App. 6. Estoppel to be availed of as a defense must be pleaded. Cockrill v. Hutchinson, 135 Mo. 75; Throckmorton v. Pence, 121 Mo. 60; Avery v. Railroad, 113 Mo. 568; Hammerslough v. Cheatham, 84 Mo. 21; Bray v. Marshall, 75 Mo. 330; Fernean v. Whitford, 39 Mo. App. 317; Plow Co. v. Lang, 55 Mo. App. 356. Lapse of time, short of the statutory period of limitations, does not constitute laches, and, like estoppel, to be available as a defense, must be pleaded. Cantwell

v. Crawley, 188 Mo. 57; Condit v. Maxwell, 142 Mo. 266; Real Estate Co. v. Lindell, 142 Mo. 61; Spurlock v. Sproule, 72 Mo. 503; Purdy v. Banker's Life Assn., 101 Mo. App. 109; Bank v. Kennett Est., 101 Mo. App. 398; Smith v. Roach, 59 Mo. App. 115. (4) The fact that Dwyer called three or four times at Bulfin's home in reference to the loan and finally secured the quit-claim deed from him establishes his agency. Ingalls v. Averitt, 34 Mo. App. 371. One who ratifies an act done in his name without previous authority ratifies it as done, and he cannot adopt the part which is beneficial to him, and reject that which is injurious. Dry Goods Co. v. Bank, 81 Mo. App. 51; Bohlmanns v. Rossi, 73 Mo. App. 313; McLachlin v. Barker, 64 Mo. App. 511; Fahy v. Grocery Co., 57 Mo. App. 73; Clark v. Clark, 59 Mo. App. 532; Horse Co. v. Bennett, 52 Mo. App. 333; Davis v. Krum, 12 Mo. App. 279; Porter v. Woods, 138 Mo. 539; Barrett v. Davis, 104 Mo. 561; State ex rel. v. Harrington, 100 Mo. 170. "Where one party to an alleged contract made by its agent denies the contract, and then introduces the agent to prove what the contract really was, such party will not be heard to deny the agent's authority to make any contract whatever." Silver v. Railroad, 5 Mo. App. 381; 72 Mo. 194.

*R. M. Nichols* for respondent.

(1) The payments of alleged non-competitive premium were made voluntarily and plaintiff cannot recover a voluntary payment made. Flynn v. Mechanics B. & L. Assn., 93 Mo. App. 444; Ranson v. Hayes, 39 Mo. 445; Kirkpatrick v. Smith, 55 Mo. 389; Peters v. Loenstein, 44 Mo. App. 406; 33 L. R. A. 358n. (2) The statutes against usury do not change this common law rule because they are penal and must be construed strictly, and because the present suit is not within its meaning. Flynn v. B. & L. Assn., 93 Mo.

App. 444; Little v. Hooker, 122 Mo. App. 620. (3) The alleged exaction of the non-competitive premium on June 10, 1896, gave a cause of action. The payment of monthly dues on the stock up to and including January, 1898, does not, within the sense of the statute, constitute "an open and current account," so as to prevent the bar of the statute. The alleged non-competitive premium was clearly barred at the institution of the suit, December 16, 1905. R. S. 1899, sec. 4278; Thompson v. Brown, 50 Mo. App. 314; Harrison v. Hall, 8 Mo. App. 167. (4) The alleged exaction of a non-competitive premium on June 10, 1896, could not be connected with the alleged promise to receive the title and account for the sum realized from the sale less the debt; it could not be a "running account" so as to draw the one into the other, thereby saving it from the statute. The case of Hunter v. Hunter is overruled. Hudson v. Cahoon, 193 Mo. 549; R. S. 1899, secs. 4273 and 4278; Richardson v. Gregory, 126 Ill. 166; Callan v. Callan, 175 Mo. 346. (5) The deed, as Bulfin says, was given to save the expense of foreclosure. There is no rule of law which would prevent the mortgagee from taking a quit-claim deed from the mortgagor in extinguishment of the mortgage. The testimony does not show that the quit-claim deed was given as a security for the debt, or that after the giving of the quit-claim deed any debt was claimed to exist by the defendant. The testimony shows that the quit-claim deed and the $25 were in satisfaction of Bulfin's interest in the property, and unless the effect of the quit-claim deed is overthrown by clear and positive evidence it must prevail. Bailey v. Trust Co., 188 Mo. 483; Jones v. Hubbard, 193 Mo. 147; Bowman v. Ush, 143 Ill. 667; Boeck v. Donnovan, 217 Mo. 70.

FARIS, J.—This is an action in equity for an accounting. It is here on appeal from a judgment

of the circuit court of the city of St. Louis, in which latter court it was begun on the 16th day of December, 1905. The circuit court found the issues for the defendant and dismissed the bill of plaintiff. An appeal was prosecuted in due form to the St. Louis Court of Appeals, but the latter court, upon its attention being called to the fact that the case, as made by the pleadings, involved the question of the constitutionality of section 3389 (R. S. 1909), and section 3391 (R. S. 1909), transferred the case here under the constitutional provision, without rendering any decision herein.

As originally filed, John Bulfin and his wife Mary E. Bulfin, were plaintiffs, and respondent Irish-American Building & Loan Association, a corporation, organized under the laws of Missouri, was defendant. Pending the action in the court *nisi,* and on the 15th day of February, 1906, plaintiff John Bulfin died, and the suit was properly revived in the present plaintiff below and appellant here, John J. Mulrooney, as administrator of John Bulfin, deceased. Upon the trial the suit was dismissed as to Mary E. Bulfin, an original plaintiff, upon the admission that she was in no wise interested in the cause of action.

In substance the allegations of the petition are that on the 9th day of June, 1896, plaintiff's intestate, John Bulfin, being desirous of purchasing a home for himself (which home was afterwards purchased and will be hereinafter called, for convenience, No. 2826 Dickson street), made application to defendant for a loan, the proceeds of which were to be used, and were used in the purchase of the house above named. This loan he agreed to secure and did afterwards secure, by a deed of trust on the premises, as well as by hypothecating with defendant as collateral, seventeen shares of stock in defendant association. The loan was evidenced by a bond for the sum of $4080, and the said bond and deed of trust securing same were duly

executed by plaintiff's intestate, hereinafter for convenience, called Bulfin, and his wife, and the same duly placed of record on the 10th of June, 1896. Bulfin was required to pay and did pay thirty per cent premium for said loan of $4080, which premium the petition avers, and the proof shows, was deducted from the sum of $4080, and Bulfin actually received in cash thereon only the sum of $2856.

Plaintiff further avers in substance that in the making of said loan by defendant it was not offered at auction as a former statute required, nor was there any competitive bidding therefor, but that it was loaned in pursuance of a certain quoted by-law of defendant, which by-law is as follows:'

"Section 1. *Funds, How Formed and Loaned.*— The object of the association shall be the accumulation of a fund to be loaned to its members, or to persons not members. This fund shall be formed from collection of monthly dues, premiums on loans, interest on loans, fines, and other sources.

"The money thus accumulated shall, at each regular meeting on the fourth Wednesday of each month, be put up at auction and awarded to the member who bids the highest premium for the same. This premium shall be deducted in advance, the successful bidder receiving in cash the amount of his loan, less the premium bid. No loan shall be made at a less premium than twenty per cent, nor at a greater than thirty per cent. If two members bid thirty per cent, lots shall be drawn between them. No loan shall be made on the same evening for a premium lower than the bid next to the successful bid.

"The borrower must pay all the expenses incident to the loan, whether said loan is ratified by the board or not."

Plaintiff's petition further averred that Bulfin had been a member of defendant association since June, 1891, and the owner of certain stock therein, on which

he had paid a large sum, namely, the sum of $1313.40. (This point, upon the proof and the admission of plaintiff's counsel upon the trial, fell out of the case and need not be further referred to). Plaintiff further averred that one Thomas Rice, who was trustee in the deed of trust aforesaid, was at the time a shareholder and director and an officer of defendant association; that by the bond securing the deed of trust aforesaid, Bulfin agreed to pay $34 per month; that upon his failure to pay said monthly installments for the period of six months, the whole debt became due, and the deed of trust became subject to foreclosure. That the last payment upon said loan was made in the month of January, 1898, and that on the 22nd of October, 1898, Bulfin, by reason of age and attendant infirmities and financial embarrassment was unable to meet the payments, and that upon said date Bulfin made a quitclaim deed to defendant association upon the representation and agreement that defendant was not to take such quit-claim deed as an absolute conveyance, but was to hold the title in trust for Bulfin; to put the premises in repair, rent the same, and collect the rents therefrom, and as soon as possible to procure a purchaser for such premises; sell the same and apply the proceeds thereof and the rents therefrom, to the payment of said loan, and to turn over the residue to Bulfin; that Bulfin was to receive, and did, as the proof shows, receive, the sum of twenty-five dollars to enable him to move from said premises, and that upon the said date of the making of said quit-claim deed, namely, October 22, 1898, the defendant association, through said Rice, the trustee, in the deed of trust, was threatening, unless a quit-claim deed of conveyance was made, to foreclose such deed of trust; that in pursuance of said agreement, defendant paid the sum of twenty-five dollars to Bulfin and he moved out of said premises; that defendant thereupon proceeded to rent said property to others; to collect the rent there-

from until March 26, 1904, on which date defendant conveyed the premises in question to certain Borrenpohls by warranty deed for the consideration of $3150, though said premises were, as plaintiff avers, at that time of the value of at least $4000. Plaintiff avers that the promises alleged by plaintiff as having been made by defendant, viz., that it would put said premises, by repairing same, into a salable condition; that it would rent the same for the benefit of Bulfin, and that it would procure a purchaser therefor, and apply the proceeds of the resulting sale, together with the rents thereof, to the payment of Bulfin's loan, were not kept or carried out, and that the same were false and fraudulent and intended so to be, and that they were designed with the intention of cheating and defrauding Bulfin out of his interest in said premises. That great faith and reliance and confidence were had and placed by Bulfin in defendant, its officers, agents and employees; that Bulfin relied upon them and upon their statements, and that the falsity of such statements and the fraudulent intent designed and intended were not discovered until after the sale of said premises to the Borrenpohls, on or about the 26th of March, 1904.

For prayer plaintiff asks that an accounting may be had between the parties, "that plaintiff may have judgment against defendant for the amount found to have been paid it by plaintiff, Mary E. Bulfin, [sic], and her deceased husband, the rents collected by said defendant, the amount defendant received for said property with interest thereon, less any amount that may be found to be unpaid on the loan, twenty-five dollars advanced to plaintiff and her deceased husband, a reasonable compensation for defendant's services in and about the property and such other and further credits as may be just and proper in favor of defendant, and for such other orders, decrees and

judgments as may be just and equitable in the premises.''

Defendant answering (a) denied generally each and every allegation contained in the petition, or any knowledge or information thereof sufficient to form a belief; (b) averred that the cause of action did not accrue within five years next before the commencement of the suit; (c) that the alleged agreement creating an implied or resulting trust was not in writing as required by statute; and (d) estoppel by deed and by the payment by defendant and acceptance by Bulfin of the sum of twenty-five dollars.

Plaintiff, by reply, denied generally the new matter.

The facts as developed upon the trial, touching which there is either no dispute, or which we find to have been proven, are about as follows:

For some five years prior to June 10, 1896, the date when Bulfin procured the loan in question, he was a shareholder in defendant association, holding twelve shares of stock. Since, however, as counsel for plaintiff concede, Bulfin turned these shares in and received their value in cash, they need not be further considered in the case. On the said 10th day of June, Bulfin obtained the loan mentioned in the petition. The proof shows that while he incurred a debt for $4080, securing such debt by a deed of trust on No. 2826 Dickson street, and by the deposit, as further security and as collateral, of seventeen shares of new stock at that time issued to him, he in fact obtained in cash on his said loan only the sum of $2856; he being charged a thirty per cent premium for his stock, which amounted to the sum of twelve hundred and twenty-four dollars, and which latter sum was deducted from the cash paid to him on his loan. He paid to his vendors for the Dickson Street property the sum of thirty-five hundred dollars in cash. This cash payment was made up of the $2856, which he actually received out of the

$4080 loan, and some six or seven hundred dollars, being the cash value of his twelve shares of surrendered stock, which sum was also paid him therefor by the defendant association. The deed of trust executed by Bulfin and wife stated upon its face that the loan bore five per cent premium per annum. This loan was agreed to be repaid by Bulfin in monthly installments of thirty-four dollars per month for ten years, which payments in the aggregate would have amount to the said sum of $4080 alleged to have been loaned to him, but the whole amount of which, as we have seen, was not so loaned to him. Between July 8, 1896, and January 7, 1898, inclusive, there was paid by Bulfin on this loan by monthly installments the sum of $683.40. Subsequent to January 7, 1898, Bulfin became and remained in default in his payments, and on the 10th day of August, 1898, he owed thereon $256.40, as shown by the books of the defendant association. At this time, as the defendant's corporation record shows, an order was made on him to pay the installments in which he had defaulted, by the September meeting of the board. Bulfin was at this time a member of the board of directors of defendant association. The date at which he became a director rests in doubt, but he seems to have been elected on this board shortly following the taking out of the loan by him. He continued as director until sometime prior to November 9, 1898. Bulfin was present at a meeting of the board of directors of defendant association on September 14, 1898, at which time, at his request, he was given an extension till the October meeting following within which to meet his delinquencies. Not paying within the time, on October 12, 1898, the board of directors (of which Bulfin was still a member, but at the meeting of which on this date he was not present), made an order that he pay within seven days, or foreclosure would be had. Bulfin did not pay within the time limited, but on October 22, 1898, joined his wife in a

quit-claim deed of conveyence, conveying the said Dickson street property to defendant corporation for the expressed consideration of the sum of one dollar, which consideration was never actually paid; though Bulfin was paid by the defendant association the sum of twenty-five dollars to pay the costs of his removing from said premises, and to enable him to rent another house. This quit-claim deed is in the ordinary form and makes no reference to any further consideration or inducement for the making thereof, except the nominal sum of one dollar. After the relinquishment of the premises by Bulfin, defendant took charge of the property, repaired it, paid the taxes thereon, rented it, collected the rents therefrom until March 26, 1904, when defendant association sold it to a certain Barrenpohl and wife for the sum of $3150, and conveyed it by deed of warranty in ordinary form. On this date, to-wit, March 26, 1904, the deed of trust from Bulfin and wife to defendant corporation was released of record. Between the date of the conveyance by Bulfin to defendant and the date of the conveyance by defendant to the Barrenpohls, defendant collected as net profits out of the rents on said property, the sum of $696.42. At the time all these matters and things were transpiring, one M. E. Smith was the president of defendant corporation, and Thomas A. Rice was the secretary thereof till January 13, 1904, and thereafter till March 26, 1904, perhaps afterward, W. P. Dwyer was acting secretary of defendant corporation. Rice and Dwyer were, during all these times, co-partners in the real estate business, and the office of defendant corporation was in the office of Rice & Dwyer, who did business as "The Rice-Dwyer Real Estate Company." Rice died on March 26, 1904, prior to the final closing up of this matter by the sale to the Barrenpohls, and some eighteen months before this suit

was brought. The above facts seem to be conceded by both sides.

A sharp issue of fact, however, arose as to whether the quit-claim deed of conveyance, dated October 22, 1898, from Bulfin and wife to defendant association, was made by the Bulfins and taken by defendant association merely for the purpose of securing the loan, or whether it was in its legal effect a mortgage carrying with it a resulting or implied trust in favor of Bulfin, by the terms of which trust defendant association was to repair the premises in question, to rent the same, procure a purchaser therefor and to sell the premises, and account to Bulfin for the rents therefrom and the proceeds thereof, over and above what Bulfin owed the defendant association. On this point, Bulfin, who testified in his own behalf, says:

"Q. Why did you make this quit-claim deed to the association? A. Well, he said he would put me out, and my wife did not want to have all our furniture thrown out on the sidewalk—and it was only a question of time—we thought we would have to go anyway, and it would save the expense of costs, and would save that much expense, and I thought it better to go out and give them a quit-claim deed. And then, according to what they said, they would sell the house, and whatever it brought after I paid what I owed in that association, they would give back to me. And that is why I gave the quit-claim deed."

It does not appear clearly whether Bulfin is claiming in the above excerpt that this statement was made by Dwyer, or by Rice, who was dead. Objections were sustained throughout the case as to what Rice told Bulfin, because of the prior death of Rice. Again, Bulfin testified in his own behalf:

"Q. Now state how you came to give this quit-claim deed to the association, the defendant here? A. Well, they wanted possession, and in order to save expense, I thought I had better make a quit-claim deed,

and they would put the house in shape and sell it; and that what the house brought, after the debt I owed in the association, I would get the balance. That was the conditions. . . .

"Q. Then this conversation was with Rice? A. Rice and Dwyer both. They were connected, you know, with the real estate business, I believe, and the other association. That was fixed between themselves, I don't know how.

"Q. The conversation which you speak of, in which you say they promised to receive the property and fix it up and sell it and divide the proceeds, was that Mr. Rice, the secretary of the Association? A. Both of them said that."

This witness further says in substance, that when Dwyer brought the quit-claim deed from Bulfin to defendant association to be signed by him and his wife, it was signed and delivered by them under "the condition that he would put the house in repair and sell it and whatever the house brought after my debt was paid in the association he would turn it over to me. He sold the house and I got nothing."

Bulfin also says that the first time Rice and Dwyer called they asked him for possession. Except the fact that the deed of trust made by the Bulfins to. defendant association was released of record on the same day that defendant executed the deed of conveyance to the Barrenpohls, to-wit, the 26th of March, 1904, there is nothing in the testimony of plaintiff, except the facts above quoted, pertinent to plaintiff's contention that a resulting trust was created, and that the absolute quit-claim conveyance was intended to be a mortgage instead of such absolute conveyance.

The testimony of Bulfin as to the conditions under which he executed the quit-claim deed, and under which he was induced to act, are absolutely contradicted by the witness W. P. Dwyer testifying for defendant. Dwyer says that he did not make the state-

ment credited to him by Bulfin and that his sole purpose in visiting the Bulfins was to obtain an absolute quit-claim deed to close up the loan under the orders of defendant, by taking over the property which secured the loan.

As to whether Bulfin, after he moved out of the property, took any interest in it, or exercised any control over it, he testified as follows:

"Q. After you left the property you say you never went back to look at it excepting as you happened to pass by? A. That is all; I had no interest in it any more. . . . .

"Q. After you moved out of it you say you had no further interest in it, and did not go back to see it? A. No, sir. Why should I bother about other people's property? I had no interest any more. I thought they would sell it some day, and that they would stand by their agreement. The only mistake that I made I should have got it in writing."

The above facts are deemed sufficient to show the points involved in the case, and should other facts be deemed pertinent in the course of the opinion, they will be therein set out.

## OPINION.

The principal contention of learned counsel for plaintiff, the appellant here, seems to be that upon the facts he was entitled to the relief prayed for. That he should have been granted an accounting by the court *nisi,* and that to this end, the court should, under the facts and the law, have decreed the absolute conveyance of October 22, 1898, to be but a mortgage merely, and that having so decreed the court should have found for plaintiff for the rents over and above the amount paid by defendant association for repairs and expenses, and for the profits accruing, by reason of the sale to the Barrenpohls of the premises; and that the court

below should have found that the premium of thirty
per cent paid by Bulfin on the loan in question was
usurious; that it should have decreed that defendant
account for all sums taken as premium in excess of six
per cent interest on the amount actually borrowed, and
that after deducting taxes, commission, repairs, and
the sum of twenty-five dollars advanced to Bulfin,
judgment should have been for plaintiff for the sur-
plus.

I. At the very threshold of this contention we
are met by the question as to whether there was in the
record sufficient testimony upon which a
court of equity would be justified in find-
ing that the deed of conveyance made by
Bulfin and wife to defendant was not, as on its face it
seems, an absolute conveyance, nor intended so to be;
but that the same was only a conveyence in the nature
of a mortgage, creating a resulting or implied trust in
favor of Bulfin.

Resulting
Trust.

Upon this point there is absolutely no proof in
the record, except the testimony of Bulfin, which we
have set out above, and the further fact that the deed
of trust was not, for some reason, released of record
until the very date when defendant association con-
veyed the premises in question to the Barrenpohls.

Opposed to the testimony of Bulfin is the absolute
and pointed denial of the witness Dwyer. The state-
ments of Bulfin as to the conversation had by him with
Rice and what Rice said therein, were properly held
by the court *nisi*, to be inadmissible, Rice being dead.
So that the matter stands, so far as the testimony in
the case is concerned, upon Bulfin's assertion of the
fact and Dwyer's denial of it. Bulfin himself is not
clear, definite, or certain about the facts and about the
alleged agreement, but states them indefinitely and
generally.

The entries shown upon the trial, from the minutes of the board, of which board Bulfin was himself at the time a member, show that from August 10, 1898, defendant association was urging payment by Bulfin, ordering the deed of trust to be foreclosed, extending the time therefor, threatening actions and endeavoring to settle the matter with Bulfin. The record entries from the minutes of defendant association's directors' meetings show neither word nor hint that the arrangement or agreement testified to by Bulfin was ever made or even considered by defendant.

While conceding that such a trust as this is alleged to be, is not within the Statute of Frauds, but that the existence of the same may be shown by oral testimony, as has been many times held in this State, yet, while so holding, our courts have uniformly held that the evidence necessary to establish such a trust must be clear, cogent and convincing. [Ringo v. Richardson, 53 Mo. 385; Smith v. Smith, 201 Mo. 533; Bunel v. Nester, 203 Mo. 429.]

In the case of Bobb v. Wolff, 148 Mo. 335, syl. 2, this court said: "In such case the *prima facie* presumption is that the deed is what it purports to be, an absolute conveyance, and the burden is cast on the grantor to overcome this burden and show it to be a mortgage, and to do that, clear, unequivocal and convincing evidence is required, and if such evidence is not forthcoming the *prima facie* presumption will prevail."

While Bulfin was a member of the board of directors, but at a meeting at which he was not present, it was ordered, as appears from the minutes, "that unless within seven days from notice he pay off the delinquency or entire loan, he must either give the association a quit-claim deed or the property be advertised for sale under the deed of trust."

We have seen that the quit-claim deed of conveyance was in the usual form of such conveyances; that

the only consideration set out or mentioned therein is the sum of one dollar; although the record shows that the dollar was not in fact paid. But twenty-five dollars was paid to Bulfin as an act of grace, or as a sort of gift, and because, as the minutes of the defendant recite, "Mr. Bulfin had no money to pay one month's rent of his new place and enable him to move."

We must therefore hold that, upon this question, the plaintiff has not met the strict requirements of the law and furnished clear, convincing and unequivocal proof that an implied or resulting trust was in fact created in his favor.

II. The unconstitutionality of certain sections of our law governing building and loan associations, to-wit, sections 3389 and 3391, is urged by appellant. This point, since the appeal herein was taken, and since the order of transfer was made by the St. Louis Court of Appeals, has been decided adversely to plaintiff's contention in the case of Spithover v. Building & Loan Assn., 225 Mo. 660. This is a well-considered case, with which we are not inclined to differ, but approve all that is said in that case upon the facts involved. The appellant, in a supplemental brief filed in this court, is frank enough to concede that this holding is against him, but urges that the transaction in this case is so unreasonable and extortionate as to be open to investigation and correction by this court. In support of this contention he cites section 3391, Revised Statutes 1909.

*Constitutional Statute.*

We may say that we agree with learned counsel for appellant that the premium charged Bulfin was, under the facts here, so unreasonable and extortionate as to render the transaction open to investigation and correction by this court, if we were able under the law to reach this point. But unfortunately for appellant, the first point

*Usury: Limitations.*

urged by him, having, for the lack of proof sufficient in law, fallen out of the case, by that fact this one also falls out. In our view, if appellant could have maintained the point urged by him, that an implied trust was, under the law and the evidence, created by the facts and circumstances in this case, then by the same token, he would have been enabled so to connect and link up all the transactions here as to have furnished this court with a legal excuse to investigate the unreasonable and extortionate character of the transactions of defendant in exacting the premium of thirty per cent charged by it against Bulfin for this loan. [Freeland v. Williamson, 220 Mo. 217.]

We have seen, however, that the first payment of the monthly installments provided for by the deed of trust, which installments included the usurious interest sought to be recovered, as being unreasonable and extortionate, occurred in July, 1896, and the last of these payments occurred January 7, 1898. This suit was not brought until December 16, 1905, at which time almost nine years had elapsed from the first payment, and almost seven years from the last payment. We are mindful of the rule and of the statute as well, which tolls the bar of the Statute of Limitations in cases of fraud; but we have been compelled to hold, upon the facts, that no fraud existed here, nor is any shown in the matter of the conveyance. The matter of payment, therefore, of the alleged extortionate premium stands isolated in the case, and we are unable to connect it with any other proven facts so as to take it out of the bar of the Statute of Limitations. It stands, as it were, in the case as a voluntary payment of usurious interest, made almost seven years before the bringing of the suit. The defendant urges that the five year Statute of Limitations is a bar to an investigation of the matter of the payment of usurious interest, and in this view we are forced by the law, with reluctance, when we consider the transaction, to con-

cur. It will not do to say that this point is saved by the fact that the usurious interest alleged to have been paid, was something which in somewise accrued out of real estate, and that therefore, the statute of ten years applies, because this is, in a sense, a real action. We deem this view inaccurate, when applied to the facts here. The real estate involved is but an incident, the premises in question merely served as security for the loan; the loan itself was the thing for which the usurious interest was charged. So this contention, we take it, must fall by the wayside. We do not want to be understood as holding that under the facts here the by-law of defendant association quoted, is a proper one, and that it is in compliance with our statute governing building and loan associations. Nor do we want to be understood as holding that in a proper case, or a case wherein the premium charged is unreasonable and extortionate, we have not ample authority to investigate these matters. The statute itself (Sec. 3391, R. S. 1909) confers this power upon the courts.

For the reasons given we are of opinion that this case should be affirmed, and it is so ordered.

*Brown, P. J.,* and *Walker, J.,* concur.