CITIZENS NATIONAL BANK, Respondent, v. JENNIE U. ROMBAUER, et al., Appellants.

Kansas Ctiy Court of Appeals, November 6, 1916.

1. **PLEDGES: Implied Contract.** To constitute a pledge, there must be a contract to that effect; but it is not essential that such a contract shall be an express one. It may be implied and where the maker of an individual note, who had given collateral security, stated, when pressed to pay the note of a corporation which he had endorsed, that he thought the collateral applied to the corporate obligation, and the bank ceased to press for payment of the corpo-

rate note, there is an implied pledge of the collateral to secure the corporate note.

2. ————: ————: Construction as to Extent: Evidence. Where, as regards the extent of a pledge, two constructions are equally available, that one ought not to be adopted which is most favorable to the pledgee. Evidence reviewed and *held* insufficient to show that the contract of pledge extended beyond the individual note of the debtor and the corporate note on which he was endorser.

3. WITNESSES: Competency: Where One of Contracting Parties is Dead. An assistant cashier and stockholder of a bank, who had no authority to negotiate loans, may, in an action by the bank against the estate of a deceased borrower, testify that he overheard the borrower negotiating with the cashier, and that in such negotiations the borrower agreed to hypothecate corporate stock as security for the loan; for the assistant cashier had nothing to do with the transaction as a contracting agent.

4. BILLS AND NOTES: Consideration: Person Primarily Liable. Want of consideration cannot be urged against a note which was a renewal and extension of a former note on which defendant's name appeared as comaker.

5. APPEAL AND ERROR: Abstracts: Bill of Exceptions. Under rule 26, declaring that no appellant need abstract record entries evidencing his leave to file, or filing of, a bill of exceptions, it being sufficient if his abstract state the bill of exceptions was duly filed, an alleged error in the abstract as to the signing and filing of the bill of exceptions will not, where it was shown to have been duly filed, preclude a consideration thereof.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED AND REMANDED (*with directions*).

*George N. Davis* for appellants.

*Cooley & Merrell* for respondent.

TRIMBLE, J.—At the time of R. G. Rombauer's death he was indebted to the plaintiff bank upon a promissory note for $750 executed by himself and his wife Jennie U. Rombauer. He was also obligated to the bank as endorser of a note for $2100 executed by M. T. Rombauer and as endorser of a $5000 note of the Rombauer Coal Company. After his death,

the bank secured the allowance of all three notes as demands against his estate.

The bank then brought this proceeding against Jennie U. Rombauer individually to recover judgment against her on the $750 note, and against the estate of R. G. Rombauer, deceased, to foreclose the bank's lien on one hundred and sixty shares of the capital stock of the Macon Coal Company which the bank claimed was pledged by R. G. Rombauer to secure all of his obligations to the plaintiff.

The defendant Jennie U. Rombauer filed an answer pleading no consideration for her execution of the note. The executors of the estate of R. G. Rombauer in their answer admitted the allowance of the three demands against his estate, but denied that the bank held the shares as collateral security and prayed the court to decree their return to the estate.

The trial court, after hearing the case, rendered judgment against Jennie U. Rombauer on the note sued on; the court further found that the stock in controversy had been assigned, pledged and delivered by said R. G. Rombauer to plaintiff as security for all the debts and obligations which he owed the bank, and decreed a foreclosure sale of the same. The defendants appealed.

The bank's proof of the pledging of the stock by deceased consisted of the testimony of the bank's assistant cashier, Mr. Connor. His evidence was objected to on the ground that Rombauer was dead. The objection was overruled, and this is urged as error.

Connor testified that he was assistant cashier and a stockholder in the bank, but had no authority to negotiate loans therefor; that he was present in the bank and heard a conversation between R. G. Rombauer and the cashier of the bank, Mr. Fout, in relation to the pledging of the stock; that Rombauer asked him (the witness) to go to the vault and get Rombauer's private lock box which he did, and gave it to Mr. Rombauer; that the latter took the certificate out of the box, signed his name on the back and handed the

certificate to Mr. Fout telling him he was putting it up as collateral for the personal loan he was then negotiating. (This loan at that time was $3000 but afterwards it was reduced to $750 in renewal of which the note in suit, signed also by Mrs. Jennie U. Rombauer at the bank's demand, was given.) Connor further testified that the certificate of stock thereafter remained with the bank as pledged collateral; that it was still in the possession of the bank; that the signature to the assignment on the back of the certificate was Rombauer's genuine signature; and that he, Connor, took no part in the conversations or negotiations between Fout, the cashier, and Rombauer. He also testified to a later conversation between Fout and Rombauer, relied upon by the bank to prove the pledging of the stock for the payment of the two other notes hereinabove mentioned, but we will refer to that part of his testimony later.

Under the foregoing facts it must be held that Connor was not incompetent to testify by reason of Rombauer's death. He was not a party to the contract and took no part in the negotiations between Fout and Rombauer. He had no power to make such contract and had nothing to do therewith as a contracting agent. The facts bring the case squarely within the ruling made by the Supreme Court in Southern, etc., Bank v. Slattery's Admr., 166 Mo., 620, which ruling is approved in the later cases of Spithover v. Jefferson B. & L. Assn., 225 Mo. 660, l. c. 667 and Ham, etc., Investment Co. v. Catherine Lead Co., 251 Mo. 221, l. c. 742.

It is not seen wherein Mrs. Rombauer can successfully claim a want of consideration for the note she signed. It was a renewal and extension of a former note and the extension was a consideration. Her name appears on the note as a co-maker thereof. She is primarily liable thereon. [Lane v. Hyder, 163 Mo. App. 688.] No fraud in the obtention of her signature was pleaded or attempted to be shown.

The evidence relied upon to establish a pledging of the stock to secure the two notes of $2100 and $5000, on which Rombauer was an endorser, is, as stated, the further evidence of Connor who testified that after the stock had been pledged to the bank to secure Rombauer's individual note, he heard another conversation between Rombauer and Fout. The cashier was pressing Rombauer for payment of the $5000 Rombauer Coal Company note on which he was an endorser. Connor testified that, at the time Fout was pressing this demand upon Rombauer, the latter objected to giving any additional security saying he didn't understand why it was wanted inasmuch as the bank held his Macon Coal Company stock on this note as well as on his individual note and he so regarded it. No additional security was given nor was the note paid by Rombauer as there was due thereon $4287.50 at the time of his death. Appellants say that Connor did not testify to hearing any formal, express, acceptance by the bank of Rombauer's offer of the stock as a pledge for the $5000 note, and that hence there is no pledge therefor. We think that Rombauer's statement cannot be regarded as being a mere offer to pledge the stock for that debt also, but rather as an admission that it had theretofore been pledged therefor. However, if it be considered as an agreement, then made, that the stock should be so held, there is enough shown in the facts and circumstances from which the trial court could rightfully find, as it did, that the contracting parties agreed that the stock was also pledged as security for the $5000 note. To constitute a pledge, there must, of course, be a contract to that effect "but it is not essential that such a contract shall always be an express one, for it may be implied or inferred from the facts and circumstances of the case, if it appears that the minds of the parties met with respect to the same subject-matter and consented to the same thing for a sufficient consideration." [Wilkinson v. Misner, 158 Mo. App. 551, l. c. 561-2.] Clearly the owner of the stock consented to the bank's

holding the stock as security for the $5000 note as well as his individual note, and the bank thereafter held it as such security, and did not press its demand further.

The bank, however, claims that the stock was also pledged for the payment of $2100 note of M. T. Rombauer on which R. G. Rombauer was endorser, and the judgment is in accordance with that contention. But we are unable to find anywhere in the testimony any evidence to sustain such a claim or finding. Connor is the only witness who testified to facts tending to show a contract of pledge, and he nowhere says Rombauer agreed that the stock should be held as security on this note. It is claimed that Connor testified that Rombauer said that the stock was held as collateral for *all his obligations*. But an examination of the record will disclose that Connor did not so state. In answer to the first question, Connor said: "Mr. Rombauer was called on to make payment of a $5000 note the bank held, executed by the Rombauer Coal Company, on which he was security, he come in and made this statement, that he didn't understand why we wanted him to give extra collateral as we held his Macon County Company stock, which was ample collateral on both companies and his individual note, and he so regarded it." The last clause of this answer is not clear if *two* companies are referred to, since but one company note is disclosed. If, however, Connor said "which was ample collateral on both the company's and his individual note" and the stenographer wrote it "which was ample collateral on both companies and his individual note" then the meaning is clear. In a later answer, Connor, in giving the items of indebtedness owed by Rombauer at the time of his death, named the $750 note, the $2100 note of M. T. Rombauer and the $5000 note of the Rombauer Coal Company, and then stated that they all had been allowed as demands against the Rombauer estate, and that he (Rombauer) "was obligated to the bank for (them) at the time he made this last statement *that*

*the collateral covered his obligations.''* But this seems
to be merely Connor's construction of what Rombauer
said rather than a statement of what he did say, for
Connor had not theretofore stated that Rombauer had
said the collateral ''covered his obligations.'' And
these words would as well refer to the two obligations
mentioned, namely, the $5000 Rombauer Coal Com-
pany note and Rombauer's individual note. But in
Connor's answer to the very next quesiton, put to him
by counsel for the bank, he shows that Rombauer was
considering only the $5000 note at the time he was talk-
ing to Fout. Connor was here asked and testified as
follows:

''Q. I understand you to testify that at the time
you heard Major Rombauer make the statement that
you last testified to, that the bank held this collateral
*for all his obligations to the bank,* he was talking
about not only his individual notes but the notes he
was on as security? A. At the time he made that
statement Mr. Fout was demanding payment of this
Rombauer Coal Company note of $5000. *He made the
statement that this 160 shares of stock he considered
as collateral on this note, the same as on any of his
personal indebtedness.''*

Still further on, Connor, in answer to a question
asked by counsel for the bank, stated that the last time
he heard Rombauer say anything about the collateral
''was at the time when the cashier was attempting to
collect the Rombauer Coal Company's note for $5000,
he made the statement in regard to his collateral *in
regard to the company note.''* So that the only place
wherein the idea is conveyed that the stock was being
held by the bank as collateral ''for all his obliga-
tions to the bank'' is in the question of plaintiff's
counsel and not in the language of the witness. It is
incumbent upon the plaintiff to establish the pledge to
the full extent of the lien given by the judgment.
There should be no ambiguity as to the extent of the
pledge especially in a case like this where one of the
parties is dead and the question as to whether the

pledge was later intended to cover an additional obligation, not mentioned when the pledge was made and never specifically mentioned, but which the pledgee cannot hold except by a most favorable construction of words which are not only very general in their nature, but which may as easily refer only to the obligations specifically mentioned. Where, as regards the extent of a pledge, two constructions are equally available, that one ought not to be adopted which is most favorable to the pledgee. [Dibert v. D'Arcy, 248 Mo. 617.] We do not think the extent of the pledge in the case at bar, so as to cover the M. T. Rombauer note, is open to two equally available constructions, but that the plaintiff's proof fails to show that a contract of pledge, in reference to the $2100 note, was made. The judgment is, therefore, erroneous in so far as it subjects the stock to the lien of that demand.

Respondent bank contends that there is nothing before this court for review except the record proper, because of an alleged error in the abstract as to the signing and filing of the bill of exceptions. The abstract states that the bill of exceptions was duly filed, which is sufficient in the absence of any showing to the contrary. [See Rule 26.]

For the error above noted the cause is remanded with directions to modify the judgment in accordance with this opinion, by eliminating from the lien of said pledge the $2100 note aforesaid. The other judges concur.