CASE 14.—M. WARD AND OTHERS WERE ARRESTED FOR
REFUSAL TO PAY THE BOARD OF EXAMINERS
FOR RENEWAL CARDS AS PROVIDED IN ACT
OF 1902 TO REGULATE BARBERING.—December
17, 1909.

## Commonwealth v. Ward, &c.

Appeal from Jefferson Circuit Court (Criminal Branch).

JOSEPH PRYOR, Judge.

The trial court held the act invalid, and the Commonwealth appeals.—Reversed.

1.   Statutes—Construction—Giving Effect to Entire Statute—
Conflicting Provisions.—All sections of an act if they be germane one to the other, and relate to the same common subject, must be construed together, and apparently conflicting or contradictory provisions or sections reconciled so as to make, if practicable, one harmonious intelligent whole, expressing the legislative intent.

2.   Licenses — Act Regulating Barbering — Persons Subject
Thereto.—Section 1, c. 51, p. 101, Laws 1902 (Ky. St. Sec. 165a (Russell's St. Sec. 2279), makes it unlawful for any person to follow the occupation of barbering in cities of the first, second, and third class without a certificate of registration, but that the act shall not apply to persons now engaged in barbering, or who have been so engaged during three years prior to the taking effect of the act. Held, that the proviso does no more than exempt the persons named therein from the taking of an examination, and does not relieve them from the other requirements of the act, including the payment of a fee for a renewal card.

3.   Licenses—Act to Regulate Barbering—Unlawful Discrimination.—That under Laws 1902, p. 101, c. 51 (Ky. St. Sec. 165a [Russell's St. Secs. 2279-2291]), to regulate barbering, persons engaged in the business for more than three years are exempt from examination which others must submit to, is not an unlawful discrimination in their favor.

Commonwealth v. Ward, &c.

4.  Health—Trade or Occupation Affecting Public Health—Right
    to Regulate and Control.—The right to regulate and control
    persons engaged in any trade or occupation that affects the
    health of the people is no longer an open question.
5.  Constitutional Law—Class Legislation—Act to Regulate Bar-
    bering.—Laws 1902, p. 101, c. 51 (Ky. St. 165a, [Russell's St.
    Secs. 2279-2291]), to regulate barbering, is not unconstitu-
    tional as class legislation because it is confined to barbers
    in first, second, and third class cities.

JAS. BREATHITT, Attorney General, TOM B. McGREGOR,
Assistant Attorney General and JACOB SOLLINGER for Com-
monwealth.

HERMAN MORRIS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Revers-
ing.

This appeal involves the validity of an act of 1902,
entitled "An act to regulate barbering" (Law 1902,
page 101, c. 51), now section 165a of the Kentucky
statutes.  The trial court held the act invalid, and it
comes here on appeal by the commonwealth on an
agreed state of facts.  It appears from the agreed
state of facts that the appellees were actually en-
gaged in the occupation of barbering for three years
prior to the passage of the act in question, that they
refused to pay the $1 to the board of examiners for
a renewal card as provided in the act, and that they
were each arrested under authority of section 13 on
account of such refusal.

The first section of the act reads: "It shall be un-
lawful for any person to follow the occupation of bar-
ber in all cities of the first, second and third class of
this state unless he shall have first obtained a certifi-
cate of registration as provided in this act: Pro-
vided, however, that nothing in this act contained
shall apply to or affect any person who is now and

for the past three years has been actually engaged in such occupation. A person so engaged less than three years shall be considered an apprentice, and at the expiration of three years of such employment shall be subject to the provisions of this act as hereinafter provided.''

In the second section provision is made for the appointment by the Governor of a board of examiners to carry out the purposes and enforce the provisions of the act.

The third section defines the powers and duties of the board.

Sections 4, 5, and 6 relate to the compensation of the board, the reports that it shall make to the Governor, and the places at which examinations of persons desiring to become barbers shall be held.

In section 7 it is provided that: ''Every person now engaged in the occupation of barber in cities of the first, second and third class shall, within ninety days after the approval of this act, file with the secretary of said board an affidavit setting forth his name, residence and the length of time during which, and the place where, he has practiced such occupation, and shall pay to the treasurer of said board one dollar, and a certificate of registration entitling him to practice said occupation thereupon shall be issued to him.''

And in section 8 it is provided that: ''Any person desiring to obtain a certificate of registration under this act shall make application to said board therefor, and shall pay to the treasurer of said board an examination fee of five dollars, and shall present himself at the next regular meeting of the board for the examination of applicants, whereupon said board shall proceed to examine such person, and being sat-

isfied that he is above the age of nineteen years, of
good moral character, free from contagious or infec-.
tious diseases, that he had either studied the trade
for at least three years as an apprentice under a.
qualified and practicing barber; or that he had
studied the trade in a barber school or schools, as
defined by this act, for at least three years, or had
practiced the trade in another state for at least three
years, and is possessed of the requisite skill in said
trade to properly perform all the duties thereof, in-
cluding his ability in the preparation of tools, shav-
ing, hair cutting, and all the duties and services inci-
dent thereto, and is possessed of sufficient knowledge
concerning the common diseases of the face and skin
to avoid the aggravation and spreading thereof in
the practice of said trade; his name shall be entered
by the board in a register hereinafter provided for,
and a certificate of registration shall be issued to
him, authorizing him to practice said trade in cities
of the first, second and third class: Provided, that
whenever it appears that the applicant has acquired
his knowledge of said trade in a barber school, board
may subject him to an examination and withhold
from him a certificate if it shall thus appear that he
is not qualified to practice the said trade.   A bar-
ber school is hereby declared to be a school conducted
by a suitable person who is authorized to practice
the trade of a barber in this state, and in which all
instruction is given by competent persons so author-
ized, and in which the course and period of training
shall comply with the rules and regulations of the
said board adopted for the government of barber
schools.''

Section 9 permits of apprentices serving under
authorized barbers.   Section 10 provides for the is-

sual annually of cards to holders of certificates. For this card $1 is to be paid, and, upon the failure of any holder of a certificate to apply for a renewal card, his certificate may be revoked.

Section 11 directs the board to keep a register; and in section 12 it is provided that: "Said board shall have power to revoke any certificate of registration granted by it under this act for: (a) Conviction of crime; (b) habitual drunkenness for six months immediately preceding the filing of a charge with it therefor; (c) gross incompetency; (d) the keeping of a shop or the tools, appliances or furnishings thereof in an unclean and unsanitary condition; (e) failure to comply with the requirements of section 10 of this act: Provided, that before any certificate shall be so revoked the holder thereof shall have notice in writing of the charge or charges against him, and shall have a reasonable opportunity to be heard in his defense. Any person whose certificate has been so revoked may, at the expiration of ninety days, apply to have the same re-granted, and the same shall be re-granted to him upon a satisfactory showing that the disqualification has ceased. The said board shall have power to summons any person to appear as a witness and testify at any hearing appointed by it touching any such charge preferred against any barber of cities of the first, second and third class, and to examine such witness relating thereto, and shall have the right to administer oaths."

Section 13 fixes a penalty for violations of the act.

The grounds upon which the act is assailed are (1) that the appellees, having been engaged in the business of barbering for more than three years prior to the enactment of the law are not subject to its pro-

visions; (2) that, as it applies only to barbers in first, second, and third class cities, it is class legislation and unconstitutional; (3) that as the act exempts from its operation persons who have been engaged in the business of barbering for three years prior to its enactment, and requires all other persons to pay a license, it unjustly discriminates and for this reason is invalid; and (4) that it is void because its provisions are inconsistent and irreconcilable and confer arbitrary power.

The argument is made that, as the proviso in section 1 reads, "That nothing in this act contained shall apply to or affect any person who is now and for the past three years has been actually engaged in such occupation," therefore persons who were engaged in the business of barbering at the time the act was passed and had been so engaged for a period of three years prior thereto are exempt from all of its provisions. If this was the proper construction of the act, it is manifest that under the agreed state of facts appellees were not amenable to its provisions, and hence no prosecution could be maintained against them for its violation. But we are unable to agree with counsel that the act exempts altogether from its provisions persons who at the time of its enactment had been actually engaged in the business of barbering for three years or more. It is a familiar rule of statutory construction that all the sections of an act, if they be germane one to the other and relate to the same common subject, must be construed together, and apparently conflicting or contradictory provisions or sections reconciled so as to make, if practicable, one harmonious intelligent whole that will express the legislative intent. Cumberland & Ohio R. Co. v. Barren County Court, 10 Bush, 604; Pendle-

ton v. Pendleton, 6 Bush, 469; Commonwealth v. Grinstead, etc., 108 Ky. 59, 55 S. W. 720, 57 S. W. 471, 21 Ky. Law Rep. 1444, 22 Ky. Law Rep. 377; Sams v. Sams, 85 Ky. 400, 3 S. W. 593, 9 Ky. Law Rep. 24; Commonwealth v. Herald Publishing Co., 128 Ky. 424, 108 S. W. 892, 32 Ky. Law Rep. 1293; Morrell Refrig. Car. Co. v. Commonwealth, 128 Ky. 447, 108 S. W. 926, 32 Ky. Law Rep. 1389.

Construing the act in the light of this cardinal principle everywhere recognized and applied, we have no difficulty in reaching the conclusion that all persons engaged in the occupation of barbering in first, second, and third class cities are subject to its provisions. If the clause in the first section relied on as exempting from the operation of the act persons who at the time of its passage had been engaged in the occupation for three years should be read alone without reference to the remainder of the act, the contention of counsel would be well founded. But, to so read it, we would be obliged, not only to ignore entirely section 7, which declares that all persons engaged in barbering shall obtain a certificate, but the general purpose of the act which was intended to protect the health of the public by requiring all barbers to observe such reasonable rules and regulations as the board of examiners may promulgate for the conduct of the business that will tend to secure, not only competent and cleanly barbers, but will require them to keep their places of business, together with the implements and furnishings, in a clean, healthful, and sanitary condition. No barber is exempt from the provisions of this section.

This act in its separate parts and as a whole deals with three classes of barbers: (1) Those who were engaged in the business of barbering three years

before its passage; (2) those engaged in the occupation for less than three years before its enactment; and (3) those who entered into the business after the act became a law.   The persons in the first class are not required by the act to stand an examination as to their fitness or qualifications to discharge in a competent manner the duties of a barber.   They were doubtless excused from taking this examination upon the theory that, as they had been engaged in the business three years, it might reasonably be assumed that they were qualified to perform in a skillful manner such duties.   But this class must file the affidavit provided for in section 7, and pay their annual fee for a renewal card.   In the second class come persons who have been engaged in the business before the act became a law, but for a less period than three years, are called apprentices.   And these after they have been so engaged as apprentices for this time must stand an examination under section 8.   The time in which they may take this examination depends on the date of apprenticeship.

To illustrate, if they had been engaged as apprentices for two years before the passage of the act, they could apply for a certificate of registration within one year thereafter.   The third class are also regulated by the provisions of section 8.   It will thus be seen that, with the exception of the exemption from examination allowed those barbers who were engaged for three years or more in the occupation before the act became a law, all the other provisions of the act became immediately operative upon every barber in the classes of cities named.   The fact that persons engaged in the business for more than three years are exempt from examination which others must submit to is not an unlawful discrimination in their fa-

vor.   Similar exemptions may be found in the acts
relating to dentistry, pharmacy, and the practice of
medicine, and these acts have been upheld in Dris-
coll v. Commonwealth, 93 Ky. 393, 20 S. W. 431, 14
Ky. Law Rep. 376; Hargan v. Purdy, 93 Ky. 424, 20
S. W. 432, 14 Ky. Law Rep. 432; Webster v. State
Board of Health, 113 S. W. 415; Kentucky Board of
Pharmacy v. Cassidy, 115 Ky. 690, 74 S. W. 730, 25
Ky. Law Rep. 102; Nelson v. State Board of Health,
108 Ky. 769, 57 S. W. 501; 22 Ky. Law Rep. 438,
50 L. R. A. 383; Smith v. State Board of Dental Ex-
aminers, 113 Ky. 212, 67 S. W.   999, 24 Ky. Law
Rep. 25.

The power to enact legislation of this character
has been so fully considered and affirmed in the cases
cited, as well as the State v. Briggs, 45 Or. 366, 77
Pac. 750, 78 Pac. 361, 2 Am. & Eng. Ann. Cas. 424, and
State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A.,
88, 79 Am. St. Rep. 422, where legislation involving
the validity of the acts regulating barbers was before
the court, that it seems unnecessary that we should
enter into the subject.  The right to regulate and con-
trol persons engaged in any trade or occupation that
affects the health of the people is no longer an open
question.  Legislation having this object in view has
been approved by every court in the land.  This prop-
osition is not controverted by counsel for appellees,
who concedes that it is competent for the Legislature
to confer upon a board the authority to prescribe
such rules and regulations as may be necessary to se-
cure in the interest of the public, not only competent
and skillful barbers, but clean, decent, and sanitary
implements, furnishings and apartments.  His argu-
ment does not challenge the power, but the imperfect

manner in which it was attempted to be exercised in this act.

The objection to the act because it is confined to barbers in first, second, and third class cities is not well taken. The purpose of police legislation and regulation is to deal with persons and conditions as they exist in the places and communities to which the law applies. Such legislation is not intended to reach or touch all persons or conditions, but only those that the legislature may deem it necessary to control or regulate for the safety and protection of the public health or morals. The persons or conditions that need to be restrained may be confined to few persons and widely separated places. And, while the law should be uniform in its effect upon the particular persons or conditions dealt with, yet it may be limited in its operation to particular classified places so that it will reach the situation appearing to demand regulation. In cities of large population there are many trades and occupations not found in smaller places, and conditions that only exist where many people are gathered in a limited territory. And so it is appropriate that a law having for its purpose the protection of health should be limited to those places where it may work practical benefit. And, as the cities and towns in the state have been classified, we know of no good reason why legislation of this character should not be limited to the classes of cities in which there exist conditions that seem to demand it.

The rule of uniformity running through the Constitution, and applied in the case of Hager v. Walker, reported in 128 Ky. 1, 107 S. W. 254, 15 L. R. A. (N. S.) 195 (but cited by counsel in 32 Ky. Law Rep., 748), was not intended to affect legislation properly coming within the scope of the police power

of the state. When the Legislature comes to exercise authority under this power, it may deal with the persons, trades, or occupations subject to the power doing business in one or more of the classes into which the cities are divided without extending its supervision to persons engaged in similar trades, occupations, or business in other classes or in other parts of the state. An act imposing limitations upon the individual in the pursuit of a business that comes within the police power will not be condemned as class or discriminatory legislation because it is limited to one or more classes of cities.

It is further insisted that the law grants arbitrary and unreasonable power to the board of examiners by delegating to them authority to grant as well as to revoke for certain causes licenses. As the board of examiners has not attempted to deal with the appellees in an arbitrary or unreasonable manner, we may pass this question, with the suggestion that it is not involved in this case. It will be time enough to consider in what manner the courts can afford relief to complaining barbers who have been subjected by the board to unreasonable or arbitrary rules or regulations when the question comes before us.

Wherefore the judgment is reversed, with directions to proceed in conformity with this opinion.