## Douglas Park Jockey Club v. Talbott, et al.

(Decided February 6, 1917.)

## Appeal from Jefferson Circuit Court
## (Chancery Branch, Second Division).

1. Constitutional Law—Statutes—State Racing Commission.—Section 3990a, Kentucky Statutes, establishing a State Racing Commission, giving to said commission the power to prescribe the rules, regulations and conditions under which running races shall be conducted, and outlawing all such races, except as licensed by the commission, which is also given the power to revoke or refuse to issue or renew a license, for any violation of such rules, subject to the review of a court of competent jurisdiction, has for its purpose the encouragement of the industry of breeding thoroughbred horses in the state, and the authority conferred upon the commission to ascertain the conditions which would effect the legislative intent, and to adopt rules, regulations and conditions in accordance therewith, as conditions precedent to the right to conduct such races, is a valid exercise of the police power of the state, and not objectionable as an unconstitutional delegation of legislative powers to a ministerial body, the acts of ascertaining the conditions that would best effect the legislative intent, and adopting rules, regulations and conditions to that end, being purely ministerial and in no sense legislative in their nature.

2. Constitutional Law—Equal Protection of the Laws—Ministerial Body.—The act of a ministerial body, invested with power to ascertain the conditions that will carry out the purpose of the legislature in adopting a certain law, is not unconstitutional, as denying the equal protection of the laws guaranteed by the federal constitution, merely because it prescribes different rules, regulations and conditions with reference to different classes or with respect to the same class under different conditions, the application thereof being uniform under like conditions.

3. Constitutional Law—Due Process of Law—Races.—The adoption of certain rules, the compliance with which is made a condition precedent to the right to conduct running races, is not a taking of property without due process of law, as no one has an inherent right to operate a race track in this state.

4. Statutes—State Racing Commission—Powers of.—The State Racing Commission has the power to regulate the amount of purses to be offered for running races in the state, provided, of course, the regulations are in accordance with the conditions existing in different parts of the state and are reasonable and uniform under like conditions.

BASKIN & VAUGHAN and HARVEY MYERS for appellant.

JOHN T. SHELBY, FRED FORCHT, JR., and SHELBY. NORTH-CUTT & SHELBY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The Kentucky State Racing Commission on September 1st, 1916, adopted the following rule:

"That no purse less than $800.00 shall be given by any race track within ten miles of a city of 200,000 population or $600.00 by any other track, for races run by horses, at a meeting held under the authority of this commission."

Appellant, which owns and operates a race track within ten miles of Louisville, Kentucky, a city having a population of over 200,000, brought this action against the racing commission, seeking to enjoin the enforcement of the above rule; claiming, first, that the legislature cannot delegate to the racing commission power to fix the amount of the purses; second, that it did not in fact delegate such power; and, third, that the rule adopted by the commission is a discrimination in favor of the Lexington track, which, under the rule, is required to give purses not less than $600.00, and deprives appellant of its property without due process of law, and denies it the equal protection of the laws, in violation of the fourteenth amendment to the Constitution of the United States. Plaintiff's motion for a temporary injunction, to restrain the enforcement of the rule, was overruled, and defendant's demurrer to the petition was sustained. Plaintiff declining to plead further, its petition was dismissed, and it has appealed.

Section 1 of the act, Kentucky Statutes, section 3990a, provides, that:

"Any corporation formed for the purpose of racing and breeding or improving the breed of horses and conducting races and contests of speed, shall have the power and right, subject to the provisions of this act, to hold one or more running race meetings in each year, and to hold, maintain and conduct running races at such meetings. At such meetings the corporation, or the owners of the horses engaged in such races, or others who are not participants in the racing, may contribute purses, prizes, premiums or stakes to be contested for."

It will be noticed, first, that the corporation which is authorized to contribute purses, etc., to be contested for, must be one that is formed for the purpose of "racing *and* breeding or improving the breed of horses," etc., not racing alone, and, that such corporation has the

power and right to hold race meetings only subject to the provisions of the act.

Section 2 of the act creates a State Racing Commission, and section 3 provides, in part, as follows:

"Said commission shall have the power to prescribe rules, regulations and conditions under which running races shall be conducted in this state, and no such races shall be conducted except by a corporation or association duly licensed by said commission, as herein provided. . . . . And every such license shall contain a condition that all races or race meetings conducted thereunder shall be subject to the rules, regulations and conditions from time to time prescribed by the commission, and shall be revocable by the commission for any violation thereof, or whenever the continuation of such license shall be deemed by the commission not conducive to the interests of legitimate racing;" . . . . and a review is permitted, by a court of competent jurisdiction of the action of the commission in refusing to issue, or revoking a license or refusing to assign racing dates.

By section 4 of the act, every running race meeting, except as allowed by this act, is declared to be a nuisance, punishable as a misdemeanor, and subject to abatement by injunction.

Section 5 limits the application of the act, to running races.

In State Racing Commission v. Latonia Agricultural Assn., 136 Ky. 173, this court declared the act to be constitutional and valid; that its purpose is to foster the industry of breeding throughbred horses in the state; that it is a police regulation, outlawing all racing, except as licensed by the commission, who shall in advance prescribe the general conditions upon which the license may be obtained; and that it invests the commission with the power to ascertain the fact, whether or not a given applicant for license is so situated as to conduct orderly, lawful public races; "to ascertain and set forth the particular states of fact that will promote the breeding of thoroughbred horses, and the conducting of legitimate races, and to prohibit the evil of unlawful gambling on the race courses."

1. Appellant's first insistence is, that the legislature cannot delegate to the racing commission, the power to fix the amount of the purses—that the fixing of purses is a legislative act that the legislature cannot

delegate. The error in this position is, in the assumption that the fixing of a minimum purse, by the commission, as a condition precedent to the operation of a race track, is a legislative function, which it clearly is not. The legislature has declared the law to be, that all racing is unlawful, except upon such conditions as will promote the breeding of thoroughbred horses in the state, and prevent unlawful gambling; and, at the same time, delegated to the commission the power to ascertain and prescribe the rules and regulations that will accomplish this result. To ascertain and prescribe the conditions or facts that will promote the industry of breeding thoroughbred horses, and prevent unlawful gambling, is a ministerial act, and is not an act of legislation. The act of legislation is, the prohibition of racing, except upon certain conditions, while the act of ascertaining the facts that will promote the industry of breeding thoroughbred horses, and prevent unlawful gambling, in the state, is altogether and purely ministerial.

Assuming, for the moment, that some regulation of purses is a necessary condition precedent to the right to operate a race track, if the legislative purpose in enacting the law is to be accomplished, is it not apparent that the ground upon which the rule can be attacked, if at all, is, upon its reasonableness or its lack of justification upon the facts? But it is not attacked upon this ground, but upon the basis, that any attempt to regulate the amount of the purses, by the commission, is *ultra vires*. If appellant's contention is sustained, the commission is without authority to regulate, in any way, the purses to be offered, and the appellant may, if it so elects, offer only nominal purses, or no purses at all, even though such action should result in participation in the races of only the most inferior of thoroughbred horses, or even "scrubs," and afford only an opportunity for gambling, in nowise fostering or encouraging the breeding of thoroughbred horses in the state. While it is, of course, not insinuated that appellant would be willing to reduce its business to such a level, even if it could be done profitably, yet, would not such conditions be possible, unless the commission has the authority, as a police regulation, to prescribe such purses as will invite participation of the breeders of the very best animals that can be produced, subject, however, to the con-

dition that the regulation shall be reasonable under the circumstances?

The racing commission certainly would have the power, if it is to effect the legislative intent, to revoke or to refuse the renewal of the license of any company operating a track in this state, whenever its operation ceased to promote the breeding industry, and was profitable only because of the betting upon such races as were furnished; and this right necessarily carries with it the right to prescribe such regulations as will prevent the happening of such contingency. Unless the commission has this power, the very purpose of the legislation fails, and the whole act falls to the ground.

Further argument to prove that the legislature did confer upon the commission the power to prescribe the rule in question, and that it had the power to confer such authority, is not deemed necessary, because, in our judgment, both of these questions are decided adversely to appellant's contention, in the case of State Racing Commission v. Latonia Agricultural Assn., *supra,* where numerous authorities are cited, which sustained the conclusion in that case, and likewise sustain the conclusion here, on the two above propositions. In the course of that opinion, this court said:

"The question at hand is not as if the legislature had declared that all racing was legal, except such as the state racing commission had declared illegal. Nor is it the reverse. The legislature has outlawed all racing save such as is licensed by a board of officers, who shall in advance prescribe the general conditions upon which the license may be obtained. From the whole act, the evil which it sought to correct and the good it aimed to promote, it will be read that the legislature invests the racing commission with the power to ascertain the fact whether a given applicant for license is so situated as to conduct orderly, lawful public races, to ascertain and set forth the particular states of fact that will promote the breeding of thoroughbred horses and the conducting of legitimate races, and to prohibit the evil of gambling on the race courses; it being the purpose of the legislature to encourage the first two, and to prohibit the other. The legislature declares what is the law, the commission ascertains the facts, that is, the situation upon which the law is applied. A similar statute was upheld in State v. Thompson, 160 Mo. 333, 60 S. W. 1077, 54 L. R. A.

950, 83 Am. St. Rep. 468. Also see Port Royal Min. Co. v. Hagood, 30 S. C. 519, 9 S. E. 686, 3 L. R. A. 841; People v. Gilman (Sup.), 103 N. Y. Supp. 954; People v. Grant, 126 N. Y. 473, 27 N. E. 964; Blue v. Beach, 155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195. Other statutes delegating to ministerial officers the power of regulation have been upheld, and those powers distinguished from a delegation of legislative functions, in the following cases: Atlanta Express v. Wilmington & W. R. R. Co., 18 L. R. A. 393 (N. Car.), and Georgia R. R. & Banking Co. v. Smith, 70 Ga. 694." . . . . "We conclude that the act under investigation does not give the commission arbitrary power or devolve upon them the power of legislation."

2. Appellant's second contention—that the legislature did not delegate to the commission, the power to fix the amount of the purses, but, by section one of the act, vested such power in the owners of the tracks and the owners of the horses, by providing that the corporations and the owners of the horses "may contribute purses, prizes, premiums or stakes to be contested for"— merits but slight consideration, for this privilege, like every other privilege granted, is subject to the "rules, regulations and conditions" that shall be prescribed by the racing commission, and, having determined that the power to prescribe reasonable regulations as to the purses offered is not a legislative, but a ministerial power, delegated to the commission, the conclusion is unavoidable, that the sole right is not vested in the corporation, to fix purses without regard to what effect such purses as it may elect to fix may have upon the breeding industry and racing business of the state.

We, therefore, conclude that the authority to regulate purses is a necessary police power conferred by the legislature upon the racing commission; that it is not a legislative power, and that the legislature had the right to confer it. This conclusion determines every contention involved upon this appeal, because all depend upon the commission's power to regulate purses, as a police regulation.

3. If we are right in our conclusion—that the commission has the power to regulate the purses— then it necessarily follows, that it can ascertain facts and prescribe the conditions as to purses, in accordance with the conditions and facts existing in different parts

of the state, provided, of course, the regulations pre-scribed are reasonable, and uniform under similar conditions. We know of no reason why the commission may not perform its ministerial duties under the same restrictions that the legislature may enact legislation. That the legislature may classify legislation, not only with respect to different classes, but also with re-spect to the same class under different conditions, is thoroughly established; and it would seem indubitable, that a ministerial board, created under legislative au-thority, can, in adopting rules to enforce its ministerial powers, proceed within the same limitation, without just cause for criticism. The application of the rule in question is uniform throughout the state, under like con-ditions, and it does not appear to us to be subject to the charge of being arbitrary or discriminatory, simply be-cause appellant's race course, located within ten miles of Louisville, which has a population of more than 200,-000, must give larger purses than another race course, near Lexington, a city of 35,000 population, and not within ten miles of a city of 200,000 population, a very dissimilar condition, recognized as a reasonable ground for legislative classification. The same provision that applies to appellant, applies to every other race course that is operated under similar conditions.

It would, therefore, seem clear, that the rule does not deny to appellant the equal protection of the laws, guaranteed to it by the fourteenth amendment to the constitution of the United States.

Counsel for appellant place much reliance upon the case of Cotting v. Godard, 183 U. S. 79, in which it was held that a Kansas statute, limiting the charges which might be made by stockyards companies doing a certain amount of business, and applying to no other stock-yards companies in the state, furnished an instance of improper and unconstitutional classification. But the facts of that case are in nowise analogous to the facts here. The court in the opinion in that case, said:

"But, while recognizing to the full extent the im-possibility of an imposition of duties and obligations mathematically equal upon all, and also recognizing the right of classification of industries and occupations, we must nevertheless always remember that the equal pro-tection of the laws is guaranteed, and that such equal protection is denied when upon one of two parties en-

gaged in the *same kind of business and under the same conditions* burdens are cast which are not cast upon the other.''

That act was held to be unconstitutional because, and only because, it attempted to place a heavier burden upon one of a class than upon others under similar conditions, simply because of a larger volume of business, and that opinion is clearly sound and not antagonistic, in any way, to our position here. Appellant's petition does not allege that the commission's action is arbitrary or unreasonable, or that the classification is unfair or improper, or based simply upon earning capacity, but only that it is *ultra vires,* and that the rule is not uniform and equal. The classification not having been attacked as unreasonable or discriminating, and the classification being made upon the well established basis for classification, the courts are not warranted in holding the rule a violation of the equal protection guaranty of the constitution, since the rule is not vicious, simply because it is not uniform and equal under dissimilar conditions, the existence of which is the very basis of the right to classify.

Neither is the burden placed upon the operation of race courses, by the rule, analogous to the fixing of freight and passenger rates by railroad commissions, which is not permitted in the absence of constitutional authority; nor does appellant occupy a position analogous to a railroad company. Appellant has no right whatever to do the business for which it is licensed, except upon such conditions as will promote a particular industry of the state and prevent an attendant public evil, regardless of whether or not it is profitable, whereas a railroad company is authorized to operate, and earn a profit on its investment.

4. Upon the remaining proposition—that appellant's property is taken without due process of law— little need be said, since appellant has no inherent right to conduct a racing business, and the enforcement of the rule is not a taking of its property, in any sense, by the state, in the exercise of either a legislative or ministerial function. The act is not a revenue measure, nor an exercise of the right of eminent domain, as counsel argues, and the principles of law applicable to the exercise of such powers are not involved; hence, we do not deem it necessary to discuss authorities cited upon these questions,

The only authority exerted by the rule is one of police regulation, declared by the legislative authority of the state to be necessary to render appellant's business legal and not a nuisance. Manifestly, a rule which only prescribes a condition precedent to the operation of a race course within the law, and not as a nuisance, is not the taking of property, even though a compliance with the rule necessitates the expenditure of money. Until appellant complies with the rules of the commission, it has no right to do business, and it is optional with appellant whether or not it will part with any of its property. This does not mean it may not complain of the rule, if it is unreasonable and arbitrary, but, whether or not it might complain upon that ground, it has not attempted to do so.

Wherefore, the judgment is affirmed.