## Jewell Tobacco Warehouse Company and Others v. Kemper, Commonwealth's Attorney, et al.

(Decided January 20, 1925.)

### Appeal from Fayette Circuit Court.

1. Constitutional Law—Act Regulating Sale of Leaf Tobacco at Auction Not Invalid as Arbitrary Classification.—Acts 1924, chapter 10, regulating sale of leaf tobacco at public auction, placing all tobacco warehouses in same classification, and subject to same rules and requirements, is not invalid as employing arbitrary classification.

2. Constitutional Law—Classification of Business May be Made According to Natural and Recognized Lines of Distinction.—Classification or division of businesses, occupations, and callings into particular classes may be made according to natural, reasonable, and well recognized lines of distinction.

3. Constitutional Law—Act Regulating Sale of Leaf Tobacco at Auction Held Not Violative of Due Process.—Acts 1924, chapter 10, regulating sale of leaf tobacco at public auction, not depriving warehousemen of property without due process of law, is not violatice of Constitution U. S. Amendment 14.

4. Commerce—Act Regulating Sale of Leaf Tobacco at Auction Held Not to Interfere with Interstate Commerce.—Acts 1924, chapter 10, regulating sale of leaf tobacco at public auction, held not invalid as interfering with interstate commerce.

5. Statutes—Act Regulating Sale of Leaf Tobacco at Auction Held Not to be Special Legislation.—Acts 1924, chapter 10, regulating sale of leaf tobacco at public auction, held not to be special legislation within Constitution, section 59, subsections 4, 24, 29.

6. Statutes—Act Regulating Sale of Leaf Tobacco at Auction Held Not Invalid as to Title.—Acts 1924, chapter 10, entitled: "An act regulating the sale of leaf tobacco at public auction in this Commonwealth," held not violative of Constitution, section 51; title being concise, yet comprehensive of whole subject treated therein.

7. Warehousemen—Act Regulating Sale of Leaf Tobacco at Auction Held Within Police Power of State.—Duties under Acts 1924, chapter 10, regulating sale of leaf tobacco at public auction, held to be regulatory and within police power of state.

HUNT, NORTHCUTT & BUSH for appellants.

ALLEN, BOTTS & DUNCAN, STANLEY REED and AARON SAPIRO for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The constitutionality of an act of the General Assembly entitled "An act regulating the sale of loose leaf tobacco at public auction in this Commonwealth," passed in 1924, being chapter 10 of the Acts of that session, is called in question by this litigation. The parties plaintiffs are Jewell Tobacco Warehouse Company, New Independent Tobacco Warehouse Company, Virginia Avenue Tobacco Warehouse·Company and T. C. Geary, trading and doing business as the Geary Tobacco Company. All are corporations except the Geary Tobacco Company.

Among other things it is alleged in the petition that the plaintiffs are each now and have been for many years past engaged in the business of operating and conducting a loose leaf tobacco warehouse in the city of Lexington, Kentucky, and that in the conduct of the warehouse the plaintiffs sold tobacco at public auction over their floors; that a large part of the tobacco grown in Kentucky is so sold and that a large amount of tobacco from other states is and was shipped into Kentucky and handled in the same manner. It is then alleged "that each of them has a large investment in the warehouse operated by them respectively, and each of them employs a large number of men each year in the conduct of their. respective places of business and in the conduct of their business. Said plaintiffs state that a large part of the value of, their business consists of a list of satisfied customers and patrons, and that the business conducted by each of them has a good will value in that their customers and patrons have been selling tobacco with them respectively for a number of years, and that the disclosures of the names of their customers and patrons, who produce and own to-

bacco, and who sell same at said warehouses, and the disclosure of the post office addresses of such customers and patrons would cause to them and each of them a serious loss, in that their said customers and patrons do not desire to disclose to the public generally, or to competitors in business, the amount of tobacco marketed by them respectively, or the prices received by them respectively for the crops so grown and sold.''

After charging that the act of 1924 materially and seriously affects their rights, it is further alleged ''that in the conduct of their respective warehouses, and in conducting sales of leaf tobacco at public auction it is necessary for them to know whether said act of 1924 is valid or invalid, and whether these plaintiffs are liable for the crimes therein denounced, and subject to the penalties described in said act of 1924, and whether under said act crimes can be innocently committed by them and the.penalties therein prescribed imposed upon them even though diligent efforts are made on their part to comply with said law.''

A copy of the contract between the Burley Tobacco Co-operative Marketing Association and its members is set out in full and made a part of the petition. It is then averred ''they are advised, believe and charge that the Burley Tobacco Co-operative Marketing Association caused to be prepared and to be introduced in the General Assembly of Kentucky what is known as chapter 10 of the Acts of 1924, and that said association was largely instrumental in securing the passage of said act. Said plaintiffs state that. said act of 1924 was intended for the sole use of the Burley Tobacco Co-operative Marketing Association and was passed for the sole purpose of enabling said Burley Tobacco Co-operative Marketing Association to control more effectively its members and to secure a performance on the part of its members of contracts made with it.''

Following this is the allegation that ''under the Bill of Rights, they have the right of seeking and pursuing their safety and happiness and of acquiring and protecting property; that it is further provided in the Constitution that absolute and arbitrary power over the lives, liberty and property of freeman exists nowhere in a republic, not even in the largest majority, and that private property cannot be taken and applied to public use without just compensation being previously made. Said

plaintiffs state that said act of 1924 is invalid and in violation of the Bill of Rights and sections 2 and 13 of the Constitution; that said act is invalid, because it violates section 59, subsection 4, and section 59, subsection 29 of the Constitution."

Plaintiffs also charged that "said act of 1924 is a special or local act, passed for the sole benefit of said marketing association; that it involves an invasion of the rights of property of these plaintiffs and was intended to be and is practical inhibition of the business of selling leaf tobacco at public auction in Kentucky so long as the said marketing association continues to operate under the Bingham Co-operative Act."

It is further averred in the petition that "the legislature of Kentucky, under the guise of protecting the interests of the public, has arbitrarily attempted to interfere with private business and to impose unusual and unnecessary restrictions upon the business conducted by these plaintiffs, and that the provisions of the act of 1924 are arbitrary and oppressive." And further that "said act of 1924 is invalid, because it violates the provisions of the Fourteenth Amendment to the Constitution of the United States, and that under said law the state of Kentucky has denied to these plaintiffs, within its jurisdiction, the equal protection of the laws, and has attempted to abridge their privileges and immunities as citizens of the United States and has deprived these plaintiffs of property without due process of law. . . . That said act of 1924 is an unreasonable restriction upon their right to acquire and dispose of property; that it is an unreasonable restriction to prohibit them from conducting a business which is not detrimental to the public. . . . That the attempt on the part of the General Assembly of Kentucky to prohibit these plaintiffs from conducting a business is a taking of their property without due process of law; that a requirement that the names of all of their customers and patrons shall be disclosed is a taking of their property without due process of law and an arbitrary and oppressive restriction upon their right to do business."

To the petition is attached a prayer that the court declare the rights and duties of the plaintiffs under the act of 1924, and that the representatives of the Commonwealth be enjoined from the enforcement of that act.

An amended petition was filed in which it was alleged "that more tobacco is grown in Kentucky than in any other state in the union; that between 75 and 80 per cent of the growers of tobacco in Kentucky belong to the two co-operative associations in Kentucky; that one of said associations operates in the burley belt, which includes Fayette county, Kentucky, and the other association operates in western Kentucky in what is known as the dark belt; that the growers of tobacco, who are members of the two associations referred to raise between 75 and 80 per cent of the tobacco grown in Kentucky each year. . . . Said plaintiffs state that said associations operate warehouses in Kentucky, at which tobacco produced by certain growers is delivered to them respectively, and after the same is delivered, said tobacco is commingled with the tobacco grown by other persons, and is graded according to the demands of the market, and each grade is kept separate, but that no attempt is made to keep the tobacco grown by each producer separate and distinct from that grown by other producers, but the same, when commingled with the tobacco of others, losses its identity and each producer who delivers tobacco to either one of said associations receives a certificate to the effect that he has delivered a certain number of pounds of a certain grade."

A general demurrer was filed to the petition as amended and sustained by the trial court, judgment being entered holding the act of 1924 constitutional, and dismissing the plaintiff's petition.

For half a century Kentucky has by statutes regulated the business of warehousemen. In 1914, an act entitled "An act requiring tobacco warehouses handling loose leaf tobacco to post on their premises the number of pounds and the average price thereof of each day's sales, and prescribing penalties," became a law. The first section of the present act repealed the act of 1914, and re-enacted it in the following words:

"That it shall be the duty of any tobacco warehouseman, corporation, firm or individual, who shall receive, or who shall undertake to receive or take care of leaf tobacco, for sale at public auction, whether with or without compensation or reward, to post or cause to be posted a notice, in a conspicuous place upon the premises of said warehouseman, corporation, firm or individual, stating the number of

pounds in the aggregate, actually sold, and the average price per pound received on account of each day's sale. It shall further be the duty of said warehousemen, prior to any such sale, to post at a point in the office of said warehouse, convenient and accessible for public inspection, a typewritten or printed list showing the true name and post office address of the owner and producer and the number of pounds of tobacco of each person, firm or corporation, whose tobacco will that day be offered for sale in said warehouse. No tobacco shall be delivered to or received by any warehousemen for sale at public auction unless the true names and post office addresses of the producer and owner of such tobacco are furnished said warehousemen by the person delivering same.

"Sec. 2. It shall be the duty of said warehousemen to post said notice of sale not later than nine o'clock a. m. on the day following such sale or sales; to post said list of tobacco to be that day sold, not less than thirty minutes prior to sale of tobacco of any owner or producer.

"Sec. 3. Any warehouseman, corporation, firm or individual who shall fail or refuse to post the said notices in accordance with the provisions of this act shall be subject to a fine in a sum not less than $50.00 nor more than $100.00 for each day for so failing or refusing.

"Sec. 4. Any warehouseman, corporation, firm, or individual who shall in said notice falsify the actual number of pounds sold or the average price thereof, or shall falsely list the name, post-office address or number of pounds of tobacco of any producer or owner whose tobacco will that day be offered for sale, or shall furnish a false name or address of the owner or producer to any warehousemen, shall be subject to indictment and upon conviction shall be fined $500.00 for each offense."

Appellants insist "that the act of 1924 is repugnant to our state Constitution (1) in that it does not come within the provisions of section 206 thereof; (2) it is special legislation within the meaning of subsections 4, 24 and 29 of section 59 of the Constitution, regulating the punishment of crimes and misdemeanors and regulating trade; (3) that it employs arbitrary classification; (4)

that the attempted classification is unreasonable and unnatural, capricious and oppressive; (5) that the classification is partial, discriminatory, arbitrary and without reason; (6) it violates the Fourteenth Amendment to the Constitution of the United States; (7) it is invalid because it attempts to regulate commerce; (8) the act is special legislation passed for the benefit of the tobacco pool." All these contentions are denied by the appellees, Kemper, etc.

The act does not appear to be subject to the criticisms made of it by appellants.  It places all tobacco warehouses, whether owned and operated by a corporation, firm or individual, "who shall receive or who shall undertake to receive or take care of loose leaf tobacco, for sale at public auction, whether with or without compensation or reward," in the same classification and subject to the same rules and requirements.  It, therefore, covers all tobacco warehousemen who receive leaf tobacco for sale at public auction.  It is equal and uniform, embracing all persons, corporations and firms engaged in that particular business, that of receiving tobacco at a warehouse to be sold at public auction.  Classification or division of businesses, occupations and callings into particular classes may be made according to natural, reasonable and well recognized lines of distinction.  This rule is well established in this jurisdiction. Metropolitan Life Insurance Company v. City of Paris, 138 Ky. 801; Hager v. Walker, 128 Ky. 1; 15 L. R. A. (N. S.) 195; Brown-Foreman Co. v. Commonwealth, 125 Ky. 402; Louisville v. Schnell, 114 S. W. 742; Carlisle v. Hechinger, 103 Ky. 381; City of Louisville v. Sagalowski & Son, 136 Ky. 324; Potter v. Dark Tobacco Growers' Cooperative Ass'n, 201 Ky. 447; Owen County Burley Society v. Brumback, 128 Ky. 137; International Harvester Co. v. Missouri, 234 U. S. 199.

> "There is nothing unequal in classifying differently merchants who pay an annual tax on their stocks of goods under the revenue laws of the city and those who pay no such tax.  Likewise there is no unconstitutional discrimination in distinguishing between private bankers on a basis as to whether their business is or is not such as to require the giving of a statutory bond; or between those who sell merchandise at auction and those who sell household

furniture at the house where it has been in use; or between persons who go from house to house, and place to place, selling their own products, and those who sell in the same way the productions of others." 17 R. C. L., pp. 512 and 513.

"Under the rule that classification of occupations or forms of business may be made wherever the difference or distinction on which it is founded is not wholly without reason, it is an established rule that those who follow a commonly designated business or vocation may, where a basis for reasonable distinction exists, be reclassified or subdivided into new and separate classes. In this connection it has been declared that the legislative classification may be founded on the nature of the articles sold, as well as on the manner of conducting the business. Accordingly, it has been held that discrimination between merchants having fixed places of business in the municipality and also persons 'selling to the trade' on the one hand, and retail dealers who have no regular place of business on the other hand, is not unlawful for the purpose of license taxes." 17 R. C. L., p. 518; Commonwealth, et al. v. Hazel, 155 Ky. 30; City of Louisville v. Sagalowski & Son, *supra*.

In the case of Owen County Burley Tobacco Society v. Brumback, 128 Ky. 137, in construing the act of 1906 regulating the pooling of tobacco and other farm products for the purpose of classifying, grading and selling same, we held it was competent for the General Assembly to classify persons and occupations and to pass legislation for the government of each class as fixed, and that such a law does not grant any exclusive separate public emoluments or privileges within the meaning of the Bill of Rights, but simply selects and classifies and specifically provides what it may do without withholding the privilege from others; and so far as it affects members of a class selected, it does not violate the Bill of Rights.

In the case of Lasher v. People, 55 N. E. 663, 47 L. R. A. 802, it is said:

"Bringing to aid the presumptions in favor of the legislative power, and, also, the presumption that a state of facts exists which would warrant the selection of the persons or classes which this law hits,

we believe that the reasoning in the Minnessota & Illinois cases is convincing.

"This objection to the law is not valid. The legislature has power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. A discrimination must rest upon some reasonable ground of difference, but the classification in this case is a natural one. The commission merchants dealing in the kinds of produce named in this act, which constitute the small products of the farm, are of a different class from those who transact business in the great market for the sale of grain, live stock, and dressed meats."

There is a clear distinction between the warehousemen who sell tobacco at public auction and those who negotiate private sales. That distinction has often been recognized.

Our General Assembly has enacted and this court has sanctioned a license tax or occupational tax on auctioneers, which necessarily means that those who sell at public auction have been separated into a class and constituted such in contradistinction to those who sell in private. Section 4224, Kentucky Statutes.

Neither do we agree with appellee that the act of 1924 deprives them of property without due process of law, for it takes nothing from them but merely regulates the conduct of their business; nor does it interfere with interstate commerce, or is it special legislation within the meaning of subsections 4, 24 and 29 of section 59 of our Constitution, or violative of section 51 of that instrument, the title being concise yet comprehensive of the whole subject treated in the act.

The able and learned trial judge, who so satisfactorily presides over the Fayette circuit court, delivered an opinion at the time of the rendition of the judgment appealed from in which he, in our judgment, correctly construed and interpreted the act of 1924. We can think of no reason why a warehouseman conducting auction sales of loose leaf tobacco may not easily comply with the provisions of the act when properly interpreted. The duties are simple and easily performed. They are but regulatory and such as come clearly within the police power of the state. The act, when simplified, means that the warehouseman must post, not less than thirty min-

utes prior to the sale of tobacco of any owner or producer, at a point in the office of said warehouse convenient and accessible for public inspection, a typewritten or printed list showing the true name and post office address of the owner and producer and the number of pounds of tobacco of each person, firm or corporation whose tobacco will that day be offered for sale in said warehouse.

He must post, not later than 9 a. m. on the day following the sale, a notice, in a conspicuous place upon his premises, stating the number of pounds of tobacco in the aggregate actually sold and the average price per pound received on account of each day's sale.

Every person delivering tobacco to a warehouse for sale at public auction must give to the warehouseman the true name and post office address of the producer and owner of the tobacco; and unless such names and post office addresses are given, the warehouseman shall not receive the tobacco. If the warehouseman fails to post the notices which are required to be posted at 9:00 in the morning after the day of sale, then he is subject to a fine. If the warehouseman or person selling the tobacco falsifies the actual number of pounds sold or the average price thereof, or who shall falsely list a name, post office address or number of pounds of tobacco of the producer or owner whose tobacco that day shall be offered for sale, he is liable to a fine.

If any person shall furnish a false name or address of the owner or producer of the tobacco to the warehouseman he shall be subject to a fine.

A warehouseman who posts the name and address of the producer and owner of the tobacco, which name and address is furnished by the person delivering the tobacco, complies with the act and he is not subject to punishment in accordance with the provisions thereof even though the information given be false, unless the warehouseman actually knows that the name and address so furnished are false and untrue. He has a right to rely upon the truth of the representations made by the person delivering the tobacco to the warehouse, unless he is in possession of facts which disprove the statement. If the deliverer of the tobacco gives a fictitious or false name of the owner or producre, he calls down upon his head the penalties prescribed by the act.

So construed the act is not subject to any of the objections urged by appellants.

Finding no error to the prejudice of the substantial rights of appellant, the judgment declaring the act constitutional is affirmed.

Judgment affirmed. Whole court sitting and concurring.