Affirming. *Page 199 
In 1918 the General Assembly (chapter 144, Acts 1918) by sections 854 to 878, inclusive, Kentucky Statutes, authorized "the organization, incorporation, operation and management of building and loan associations," created "the Department of Building and Loan Associations in the office of the Banking Commissioner," and provided "for the appointment of examiners and prescribed their duties and for the examination of all building and loan associations organized and doing business under the laws of this commonwealth."
Section 865a reads:
 "For every loan made a note secured by first mortgage on real estate shall be given accompanied by a transfer and pledge of shares of the borrower. The shares so pledged shall be held by the corporation as collateral security for the performance of the conditions of said note and mortgage. The note and mortgage shall provide the number of shares pledged and the amount of money advanced thereon and shall be conditioned for the payment, as provided in the by-laws, of the monthly or weekly dues on said shares and the interest and premiums, if any, upon the loan, together with all fines, upon payments in arrears until said shares shall reach the value fixed by articles of incorporation or the by-laws or said loan is otherwise cancelled and discharged.
 "The shares without other security may, at the discretion of the directors, be pledged as security for loans to an amount not exceeding 80 per cent of their value, as determined at the time of application for said loan.
 "Provided, no loans shall be made upon paid-up, fully paid-up or matured stock.
 "If the borrower neglects to offer security satisfactory to the directors within the time prescribed by the by-laws, his right to the loan shall be forfeited and he may, in the discretion of the board of directors, be charged with one month's interest at the rate for which said money is loaned together with all expenses, if any, incurred and the money appropriated for the loan be reloaned at the next or any subsequent meeting."
This section was amended by chapter 18, Acts of *Page 200 
1934, page 45, but this amendment is not material to the question to be now determined. Therefore, we will not regard it for the purposes of this case.
The Fulton Building Loan Association was organized under the Statutes, supra. Claud Linton made application for the issuance of stock in the association and for a loan. The stock was issued and the loan advanced to him. Thereafter other certificates of stock were issued to him and other loans advanced. The transactions between him and the building and loan association are not disputed. It is unnecessary to set them out in detail.
A section of the by-laws of the association required of its members, including Linton, the payment of dues, interest, and premium on the first Saturday of each month, except persons in the employ of a railroad. "Once in six months the profits arising from interest, premiums, fines and forfeitures were apportioned among the shares in good standing." All the members of the association, including Linton, paid interest on their loans at the rate of 6 per cent. per annum and 35 cents as premium on each $100 advanced to them and 60 cents as dues on each share of stock.
It is Linton's contention that his payments of interest, premium, and dues in excess of 6 per cent. per annum were usurious under section 2218, Kentucky Statutes, and, in so far as section 865a or any other section of the Statutes authorized the building and loan association to collect of him either the 35-cent premium of 60-cent dues, it is constitutionally invalid. It is his argument that so much of sections 854 to 878, inclusive, Kentucky Statutes, as authorize and permit the building and loan association to charge and collect of him, or any borrower, a rate of interest in excess of 6 per cent. per annum, is class or special legislation within the inhibition of section 59 of our Constitution.
We have so often defined and differentiated "class legislation," "special," "local," and "general" law, it is unnecessary to reiterate either. See State Racing Comm. v. Latonia Agricultural Ass'n, 136 Ky. 173, 123 S.W. 681, 25 L.R.A. (N.S.) 905; Commonwealth v. Ward, 136 Ky. 146,123 S.W. 673; Douglas Park Jockey Club v. Talbott, 173 Ky. 685,191 S.W. 474; Jewell Tob. Warehouse Co. v. Kemper, 206 Ky. 667,268 S.W. 324; *Page 201 
Commonwealth of Ky. v. Kentucky Jockey Club, 238 Ky. 739, 38 S.W.2d 987; Shaw v. Fox, 246 Ky. 342, 55 S.W.2d 11, 14; Ravitz v. Steurele, 257 Ky. 108, 77 S.W.2d 360.
In Shaw v. Fox we said:
 "Class legislation is permissible under our constitution, and is repugnant thereto only when it comes within either of the terms, special or local law or class legislation, as above defined. State Racing Commission v. Latonia Agricultural Ass'n, 136 Ky. [173] 174, 123 S.W. 681, 25 L.R.A. (N.S.) 905; Com. v. Ward, 136 Ky. 146, 123 S.W. 673; Douglas Park Jockey Club v. Talbott, 173 Ky. 685, 191 S.W. 474; Jewell Tobacco Warehouse Company v. Kemper, 206 Ky. 667, 268 S.W. 324.
 " 'Classification is a necessary feature and power of legislation, as it is impossible for any extensive code of laws to apply to every person or subject in the state.' City of Louisville v. Com., etc., 134 Ky. 488, 121 S.W. 411, 413.
 "The power of classification for legislative purposes rests with the Legislature, subject to the constitutional limitation or restriction that it must rest on some natural and reasonable difference which appears reasonable and just in relation to the act in respect to which the classification is proposed. The Constitution permits the Legislature to indulge in making classifications of subjects of legislation for the purpose of making different classes, for the meeting of different contingencies, naturally requiring different legislation in order that the Legislature may adopt general legislation to meet the needs of the people, to promote some public object, or the welfare or interest of the general public. Smith et al. v. Board of Trustees, 171 KY. 39, 186 S.W. 927; Jones v. Russell, 224 Ky. 390, 6 S.W.2d 460. Such classification will not be disturbed by the court unless so manifestly unfounded, arbitrary, or unjust as to impose a burden upon, or exclude, one or more of a class, without reasonable basis in fact. City of Louisville v. Coulter, 177 Ky. 242, 197 S.W. 819, L.R.A. 1918A, 811; Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S.W.2d 968; Jones v. Russell, supra. *Page 202 
 "No general rule can be stated by which a reasonable basis of Legislative classification may be predicated, nor can it always be determined by analogy. The basis of classification of every act must be considered singly in the light of certain fundamental principles which are generally accepted by the courts. In ascertaining and determining the constitutionality of an act, it is a fixed rule of the courts to resolve all doubts in its favor (Coleman v. Hurst, 226 Ky. 501, 11 S.W.2d 133); nor will the courts inquire into and consider the practicability, the expediency, or the wisdom of the enactment. Coleman v. Hurst, supra. The only question to be determined by the court is one of constitutional inhibition, limitation, or restriction. State Budget Commission v. Lebus, 244 Ky. 700, 51 S.W.2d 965. Our Constitution does not delegate the power to make, nor does it prohibit the making of, classifications of subjects by the Legislature for legislative purposes, but merely prescribes inhibitions, limitations, or restrictions of the Legislature's power when making the classifications for legislative purposes (Rouse v. Johnson, 234 Ky. 473, 28 S.W.2d 745, 70 A.L.R. 1077), and the court is authorized to declare its classification invalid only when it contravenes or transgresses one or more of these inhibitions, limitations, or restrictions. State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S.W.2d 619. The court is not at liberty to declare a legislative classification unconstitutional on the round it violates public policy, as it is for the Legislature to determine the public policy so far as the state laws are concerned, and its determination thereof is only limited by the Constitution of the state and of the United States. Fiscal Court v. Pendleton County, 240 Ky. 589, 42 S.W.2d 885; Peak, Judge v. Akins, 237 Ky. 711, 36 S.W.2d 351; Stevenson v. Hardin et al., 238 Ky. 600, 38 S.W.2d 462; Sullivan v. Brawner, Sheriff, 237 Ky. 730, 36 S.W.2d 364; Kenton Campbell Benevolent Burial Ass'n v. Quinn et al., 244 Ky. 260, 50 S.W.2d 554."
It is easy to see in the light of these principles that no section of the Statutes, supra, is within the inhibition of section 59 of our Constitution. *Page 203 
It is true that in 1897, in Simpson v. Kentucky Citizens' Bldg. Loan Ass'n, 101 Ky. 496, 41 S.W. 570, 42 S.W. 834, 19 Ky. Law Rep. 1176, in 1899, in Safety Bldg. Loan Co. v. Ecklar, 106 Ky. 115, 50 S.W. 50, 20 Ky. Law Rep. 1770, in Reddick, etc., v. U.S. Bldg. Loan Ass'ns Assignee, 106 Ky. 94, 49 S.W. 1075, 20 Ky. Law Rep. 1720, in 1900, Safety Bldg. Loan Ass'n v. Montjoy, 107 Ky. 473, 54 S.W. 719, 21 Ky. Law Rep. 1189, and in 1901, in Cynthiana Bldg. Sav. Ass'n v. Ecklar, 112 Ky. 164, 65 S.W. 335, 23 Ky. Law Rep. 1467, we held that the act of 1893, authorizing building and loan associations organized thereunder to charge and collect of a borrowing member dues and premiums in addition to the rate of interest of 6 per cent. per annum, was prohibited by section 59 of our Constitution.
At the date of our opinions in those cases, the business of building and loan associations was undeveloped; the distinction between class legislation, special or local and general law was not at that time generally observed by this and courts of other jurisdictions. At the present time, in all jurisdictions, building and loan associations are recognized by the law and the courts as quasi public corporations, chartered to encourage thrift and promote the ownership of homes, with powers and immunities peculiarly their own. Louisville Gas E. Co. v. Coleman, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770; U.S. v. Cambridge Loan Bldg. Co., 278 U.S. 55, 49 S.Ct. 39,73 L.Ed. 180. Under our statutes they must loan their money to members only; must conform to precise legislation and meet the approval of the commissioner of banking, and at all times are subject to his control and supervision. "If their business has been conducted in a manner contrary to law, or if their financial condition appears to be unsound, the commissioner may take charge of the business and liquidate the assets." Hopkins Fed. S. L. Ass'n v. Cleary, 56 S.Ct. 235, 237, 80 L.Ed. ___. Our statutes confine the business of building and loan associations to organizations operating thereunder. It is generally accepted that they differ from other corporations in their purpose and nature, and as such are a proper subject of independent legislation.
The peculiar plan of business they adopt and the mutual participation in the profits arising from it are *Page 204 
held to make them a class so distinct from ordinary lenders as to warrant the distinct legislative grant of power so to regulate charges for an advance or a loan. Spithoever v. Jefferson Bldg. Loan Ass'n, 225 Mo. 660, 125 S.W. 766, 26 L.R.A. (N.S.) 1135, 20 Ann. Cas. 1258; Ravitz v. Steurele, supra.
In so far as the Simpson and other cases approving it are in conflict herewith, they are overruled.
The judgment of the circuit court is consonant with our views. Wherefore it is affirmed.